

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAR 17 2016

Madsen, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Mar 17, 2016

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DOT FOODS, INC., | ) | |
| | ) | |
| Respondent/Cross Appellant, | ) | No. 92398-1 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| | ) | Filed     MAR 17 2016 |
| Appellant/Cross Respondent. | ) | |
| | ) | |

YU, J.—We are asked to decide whether retroactive application of the legislature's amendment to a business and occupation (B&O) tax exemption violates a taxpayer's rights under the due process clause of the Fourteenth Amendment, U.S. CONST. amend. XIV, § 1, collateral estoppel, or separation of powers principles. Taxpayer Dot Foods contends that it should remain eligible for a B&O tax exemption pursuant to our decision in *Dot Foods, Inc. v. Department of Revenue*, 166 Wn.2d 912, 215 P.3d 185 (2009) (*Dot Foods* I), despite an intervening, contrary amendment to the applicable law. Because *Dot Foods* I does not encompass the tax periods before us now, we hold that retroactive application

of the legislative amendment to Dot Foods does not violate due process, collateral estoppel, or separation of powers principles. We affirm in part and reverse in part.

FACTUAL & PROCEDURAL HISTORY

The B&O tax is imposed for "the act or privilege of engaging in business activities" within the state. RCW 82.04.220(1). The tax applies unless a specific exemption exists. *See* RCW 82.04.310-.427; *see also TracFone Wireless, Inc. v. Dep't of Revenue*, 170 Wn.2d 273, 296-97, 242 P.3d 810 (2010). Former RCW 82.04.423(1)(d) (1983) exempted certain out-of-state sellers from the B&O tax if they made "sales in this state exclusively to or through a direct seller's representative," as defined in former RCW 82.04.423(2).

Dot Foods is an Illinois-based food reseller that sells products to service companies in Washington through its wholly owned subsidiary DTI. Dot Foods qualified for the direct seller's exemption under former RCW 82.04.423 from 1997 until 2000, when the Department of Revenue (Department) narrowed its interpretation of the statute. This new interpretation gave rise to *Dot Foods* I, the previous tax appeal implicated in the current dispute.

In 2009, we decided *Dot Foods* I, which held that the Department's revised interpretation of RCW 82.04.423 was contrary to the statute's plain and unambiguous language. *Dot Foods* I, 166 Wn.2d at 920-21. We concluded that

2

"Dot [Foods] remains qualified for the B&O tax exemption to the extent its sales continue to qualify for the exemption." *Id.* at 926.

Dot Foods continued to pay the full B&O tax during the pendency of its prior tax appeal to avoid penalties and interest. Clerk's Papers (CP) at 360. In December 2009, pursuant to the judgment in *Dot Foods* I, Dot Foods requested a refund for B&O taxes paid from January 2005 through August 2009, *id.* at 83-84, a time period that extends beyond the tax periods directly at issue in *Dot Foods* I.

In April 2010, the legislature amended former RCW 82.04.423 in direct response to our decision in *Dot Foods* I. LAWS OF 2010, 1st Spec. Sess., ch. 23, §§ 401, 402. The amendment retroactively narrowed the scope of RCW 82.04.423(2) and prospectively repealed the direct seller's exemption. *Id.* at § 401(4). It is undisputed that Dot Foods qualified for the exemption under former RCW 82.04.423 but is ineligible for the exemption under the 2010 amendment.

In July 2010, based on the retroactive application of the 2010 amendment, the Department denied Dot Foods' refund request for the periods outside the litigation in *Dot Foods* I, "[s]pecifically, the refund request for Wholesaling B&O tax for the periods from May 2006 through August 2009." CP at 309. However, the Department explained that "retroactive application of the bill does not affect the periods included in the Dot Foods Supreme Court decision. Specifically, it will not apply to the periods from January 2000 through April 2006." *Id.* at 308. Later

3

that year, Dot Foods negotiated a settlement with the Department for over 97 percent of the B&O taxes paid from January 2000 through April 2006, the refund period directly at issue in *Dot Foods* I. Dot Foods' Resp. Br. & Br. on Cross-Appeal (Dot Foods' Resp. Br.) at 7.

Dot Foods now seeks a refund for the B&O taxes it paid from May 2006 through December 2007, the interim period beginning immediately after the tax periods at issue in *Dot Foods* I and ending when Dot Foods' business practices changed in 2008. After the Department denied its refund request, Dot Foods brought a refund action against the Department in Thurston County Superior Court, challenging retroactive application of the amendment under theories of collateral estoppel, separation of powers, and due process.

In a letter opinion, the trial court granted summary judgment to the Department on the collateral estoppel and separation of powers issues but found in favor of Dot Foods on the due process claim. CP at 468-74. The Department appealed, and Dot Foods cross appealed on the separation of powers and collateral estoppel issues. The Court of Appeals certified the case to this court pursuant to RAP 4.4.

ANALYSIS

The history of litigation around Washington's B&O tax and its subsequent amendments has been a long and winding road.[1] While the constitutional validity of the ability to impose a B&O tax is not at issue, this case requires us to examine whether due process and collateral estoppel should disallow retroactive application of an amended statute to a particular period of time. The dispute before us is resolved by our own precedent, traditional legal principles, and cases from the United States Supreme Court and federal district courts.

## A. DUE PROCESS CLAIM

The Supreme Court set forth the due process standard for retroactive tax legislation in *United States v. Carlton*, 512 U.S. 26, 114 S. Ct. 2018, 129 L. Ed. 2d 22 (1994). *Carlton* established that "[t]he due process standard to be applied to tax statutes with retroactive effect . . . is the same as that generally applicable to retroactive economic legislation," *id.* at 30; that is, the statute must be "'supported

---

[1] *See Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 105 Wn.2d 318, 715 P.2d 123 (1986), *vacated*, 483 U.S. 232, 107 S. Ct. 2810, 97 L. Ed. 2d 199 (1987) (invalidating Washington's B&O tax scheme); *Nat'l Can Corp. v. Dep't of Revenue*, 109 Wn.2d 878, 749 P.2d 1286 (1988) (*Nat'l Can* II) (*Tyler Pipe* applies prospectively only), *overruled by Digital Equip. Corp. v. Dep't of Revenue*, 129 Wn.2d 177, 196 P.2d 933 (1996); *Am. Nat'l Can Corp. v. Dep't of Revenue*, 114 Wn.2d 236, 787 P.2d 545 (1990) (applying the remedial amendment that cured the constitutional defects of the B&O scheme to the interim period between *Tyler Pipe* and the effective date of the amendment), *overruled by Digital Equip.*, 129 Wn.2d 177; *Digital Equip. Corp.*, 129 Wn.2d 177 (*Tyler Pipe* applies retroactively, overruling *National Can* II; limiting relief to retroactive credit not a violation of due process); *W.R. Grace & Co. v. Dep't of Revenue*, 137 Wn.2d 580, 973 P.2d 1011 (1999) (affirming retroactive application of *Tyler Pipe* and upholding the exclusive remedy feature of the remedial legislation that cured the B&O tax).

by a legitimate legislative purpose furthered by rational means.'" *Id.* at 30-31 (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729, 104 S. Ct. 2709, 81 L. Ed. 2d 601 (1984)). Retroactive legislation must meet an additional burden not faced by statutes with only prospective effect, but "'that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.'" *Id.* at 31 (quoting *Pension Benefit*, 467 U.S. at 730).

We affirmed a retroactive tax amendment under the *Carlton* rational basis standard most recently in *In re Estate of Hambleton*, 181 Wn.2d 802, 335 P.3d 398 (2014), *cert. denied*, 136 S. Ct. 318 (2015). The legislature retroactively amended the Estate and Transfer Tax Act, chapter 83.100 RCW, in direct response to our decision in *In re Estate of Bracken*, 175 Wn.2d 549, 290 P.3d 99 (2012). In *Hambleton*, we upheld the retroactive application of the amendment against a due process challenge under the *Carlton* rational basis standard.

Although the present case involves a different tax scheme, the underlying facts are analogous to those in *Hambleton*, which is controlling precedent here.[2] Under the rational basis standard set forth in *Carlton*, as applied in *Hambleton*,

---

[2] The trial court did not have the benefit of our decision in *Hambleton* when it issued its letter opinion.

retroactive application of the 2010 amendment at issue here does not violate due process protections.

i.    *The 2010 amendment serves a legitimate legislative purpose*

As with other economic legislation, a tax statute must serve a legitimate legislative purpose. *Carlton*, 512 U.S. at 30. The legislature identified the prevention of "large and devastating revenue losses" as the primary purpose for narrowing the scope of RCW 82.04.423. LAWS OF 2010, 1st Spec. Sess., ch. 23, § 401(3). This is the same legislative intent that the Supreme Court recognized as a legitimate purpose in *Carlton*, 512 U.S. at 32, and that we upheld in *Hambleton*, 181 Wn.2d at 827. Additionally, the legislature concluded that former RCW 82.04.423 provided "preferential tax treatment for out-of-state businesses over their in-state competitors and now creates a strong incentive for in-state businesses to move their operations outside Washington." LAWS OF 2010, 1st Spec. Sess., ch. 23, § 401(3). This is analogous to the legislature's goal of restoring parity between different classes of taxpayers, which we also accepted as a legitimate legislative purpose in *Hambleton*, 181 Wn.2d at 826. *See also Am. Nat'l Can Corp. v. Dep't of Revenue*, 114 Wn.2d 236, 247-48, 787 P.2d 545 (1990). It is clear that the amendment to RCW 82.04.423 serves a legitimate legislative purpose under our case law.

Dot Foods alleges that the 2010 amendment is not supported by a legitimate legislative purpose because the legislature was attempting to reinstate the "'original intent'" of the direct seller's exemption. Dot Foods' Resp. Br. at 19. Dot Foods contends, and the trial court agreed, that because "the [l]egislature cannot know the intentions of a prior, distant legislature," the asserted purpose of the amendment is both arbitrary and unreasonable. *Id.*; *see also* CP at 473.

However, our duty is to review the statute for its rational basis, not to analyze the strength of its epistemological underpinnings. The rational basis test is the "most relaxed form of judicial scrutiny." *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 223, 143 P.3d 571 (2006). Our review is highly deferential, especially in light of the fact that the legislature "'possesses a plenary power in matters of taxation except as limited by the [c]onstitution,'" *State ex rel. Heavy v. Murphy*, 138 Wn.2d 800, 809, 982 P.2d 611 (1999) (quoting *Belas v. Kiga*, 135 Wn.2d 913, 919, 959 P.2d 1037 (1998)), and "'a particularly heavy presumption of constitutionality applies when the statute concerns economic matters,'" *Ford Motor Co. v. Barrett*, 115 Wn.2d 556, 563, 800 P.2d 367 (1990) (quoting *Am. Network, Inc. v. Utils. & Transp. Comm'n*, 113 Wn.2d 59, 79, 776 P.2d 950 (1989)). We have previously observed that where the legislature holds plenary power, "'the courts will not question the wisdom or desirability of such legislative requirements, so long as there is *any reasonable basis* upon which the legislative

determination can rest.'" *Bang D. Nguyen v. Dep't of Health, Med. Quality Assur. Comm'n*, 144 Wn.2d 516, 549, 29 P.3d 689 (2001) (emphasis added) (quoting *Ellestad v. Swayze*, 15 Wn.2d 281, 291, 130 P.2d 349 (1942)).

Dot Foods further claims that *Carlton* requires revenue losses be "'unanticipated'" to meet the rational basis standard. Dot Foods' Resp. Br. at 28 (quoting *Hambleton*, 181 Wn.2d at 825 (citing *Carlton*, 512 U.S. at 32)). There is no holding in *Carlton* to that effect, and Dot Foods provides no case law supporting this contention. The fact that the revenue losses in *Carlton* were, in fact, "unanticipated" is dictum. *Carlton*, 512 U.S. at 32. *Carlton* should not be— and has not been—interpreted as requiring that revenue losses be "unanticipated" in order to satisfy the rational basis standard.

Similarly, the allegation that the amendment fails to serve a legitimate purpose because the legislature had an "improper motive" of targeting Dot Foods is unsubstantiated. The fact that the legislature was acting in direct response to our decision in *Dot Foods* I does not constitute targeting a specific taxpayer, and the statement of intent does not single out Dot Foods beyond pointing to the negative impact that the decision would have on revenue generally.[3] The "improper

---

[3] The Department estimated a projected revenue loss of more than $150 million over the 2010-2011 biennium as a result of *Dot Foods* I. CP at 80. Dot Foods' refund request was for just over $500,000, Dot Foods' Resp. Br. at 9, indicating that other taxpayers would be affected by the 2010 amendment—not just Dot Foods. At oral argument, the Department specifically identified Stroh Brewery Company as another taxpayer that, like Dot Foods, qualified for the

motive" that the Court refers to in *Carlton* was targeting taxpayers after deliberately inducing them to engage in certain transactions. *Carlton*, 512 U.S. at 32. We see no evidence of any improper motive here, only the normal interplay between the legislature and the judiciary. Furthermore, as long as it is acting within its lawful power, "the motives of the [l]egislature are irrelevant to questions of state taxation under the due process clause." *Am. Nat'l Can Corp.*, 114 Wn.2d at 247 (citing *A. Magnano Co. v. Hamilton*, 292 U.S. 40, 44, 54 S. Ct. 599, 78 L. Ed. 1109 (1934)).

We do not find support for Dot Foods' assertions and hold that the 2010 amendment serves a legitimate legislative purpose.

  ii.  *The 2010 amendment is rationally related to the legitimate legislative purpose*

A retroactivity period meets the *Carlton* standard if it is rationally related to the amendment's legitimate purpose. *Hambleton*, 181 Wn.2d at 823. Relying on *Tesoro Refining & Marketing Co. v. Department of Revenue*, 159 Wn. App. 104, 246 P.3d 211 (2010), *rev'd on other grounds*, 173 Wn.2d 551, 269 P.3d 1013

---

direct seller's exemption under former RCW 82.04.423 but would not be eligible for the exemption under the 2010 amendment. Wash. Supreme Court oral argument, *Dot Foods, Inc. v. Dep't of Revenue*, No. 92398-1 (Jan. 28, 2016), at 40 min., 12 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org; *see also Stroh Brewery Co. v. Dep't of Revenue*, 104 Wn. App. 235, 243-44, 15 P.3d 692 (2001). This supports the conclusion that the legislature was not improperly targeting Dot Foods but was enacting a statute of general application.

(2012) (*Tesoro* I), Dot Foods asserts that the purported 27-year retroactivity period is "irrational on its face." Dot Foods' Resp. Br. at 24.

*Tesoro* I is not controlling authority on this court, and to the extent that the trial court relied on this case, it was operating in the absence of our decision in *Hambleton*. Further, Dot Foods' contention that a 27-year retroactivity period is per se unconstitutional is belied by the fact that we upheld a retroactive amendment that occurred 37 years after the statute was originally enacted in *W.R. Grace & Co. v. Department of Revenue*, 137 Wn.2d 580, 973 P.2d 1011 (1999). Thus, the length of time that has elapsed since a statute's original enactment is not dispositive.

While it is true that the 2010 amendment theoretically dates back to enactment under the plain language of section 402 and section 1704, LAWS OF 2010, 1st Spec. Sess., ch. 23, §§ 402, 1704, the actual retroactive application of the amendment is necessarily limited by the particularities of this case as well as the applicable statute of limitations. At issue here is whether the amendment, which went into effect on May 1, 2010, applies retroactively to the May 2006 through December 2007 interim tax periods. Thus, the retroactivity period as applied to Dot Foods is only four years.

In practical terms, the 2010 amendment cannot reach back 27 years, as Dot Foods alleges. The statute of limitations prescribed by RCW 82.32.060(1)

11

functionally limits retroactive application of the amendment to four years. A four-year retroactivity period, both as applied to Dot Foods in this particular case or as generally applicable to any other taxpayer under the statute of limitations, is well within the range of retroactivity periods that we have previously upheld. *See Hambleton*, 181 Wn.2d at 827 (eight-year retroactivity period); *Digital Equip. Corp. v. Dep't of Revenue*, 129 Wn.2d 177, 194-95, 916 P.2d 933 (1996) (four-year retroactivity period); *W.R. Grace*, 137 Wn.2d at 586-87 (eight-year retroactivity period).

Furthermore, there is no "absolute temporal limitation on retroactivity." *W.R. Grace*, 137 Wn.2d at 602. The standard set forth in *Carlton*, which has been followed by this court, states only that the retroactive period must be "rationally related" to a legitimate legislative purpose. *Hambleton*, 181 Wn.2d at 823 (citing *Carlton*, 512 U.S. at 30-31). While there are certainly constitutional limits on how far back laws may reach, *see State v. Pac. Tel. & Tel. Co.*, 9 Wn.2d 11, 117 P.2d 542 (1941),[4] whether the length of a retroactivity period breaches that limit should be determined by a qualitative analysis of the law, not solely by a quantitative measurement of time, *see Welch v. Henry*, 305 U.S. 134, 147, 59 S. Ct. 121,

---

[4] We invalidated a four-year retroactivity period in *Pacific Telephone* based solely on a reference to "'prior but recent transactions.'" *Pac. Tel. & Tel. Co.*, 9 Wn.2d at 17 (quoting *Welch v. Henry*, 223 Wis. 319, 271 N.W. 68, 72 (1937)). *Pacific Telephone* did not specify or cite to an absolute constitutional limit on retroactivity and provides no insight into why a hard-line rule should apply.

83 L. Ed. 87 (1938) ("In each case it is necessary to consider the nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation.").

In *Hambleton*, for example, we found that the retroactivity period was "rationally related to preventing the fiscal shortfall." *Hambleton*, 181 Wn.2d at 827. Noting that the eight-year retroactivity period at issue was "not far outside other retroactive periods that courts have accepted," we upheld the retroactive application of the amendment against a due process challenge because it was "directly linked with the purpose of the amendment, which [was] to remedy the effects of *Bracken*." *Id.* Furthermore, we observed that any shorter retroactivity period would have been arbitrary because "[i]t would allow some estates to escape the tax while similarly situated estates would be subject to it." *Id.* This illustrates that it is the *function*—rather than the length—of a retroactivity period that should determine whether it comports with due process protections.

In this case, the actual retroactive effect of the amendment as applied to Dot Foods is rationally related to the legislature's legitimate, stated purpose of "prevent[ing] the loss of revenues resulting from the expanded interpretation of the exemption." LAWS OF 2010, 1st Spec. Sess., ch. 23, § 401(4). Consequently, there is no due process violation.

B. COLLATERAL ESTOPPEL CLAIM

Dot Foods asserts that the May 2006 through December 2007 interim tax periods are encompassed by the judgment in *Dot Foods* I, which prevents the Department from assessing B&O taxes against it under the 2010 amendment pursuant to collateral estoppel. Dot Foods also asserts that there is statutory support for its collateral estoppel claim in section 1706 of the amending statute, which explicitly preserves final judgments, LAWS OF 2010, 1st Spec. Sess., ch 23, § 1706. We do not find support for these arguments in our case law and hold that collateral estoppel does not apply in this case.

*i.     Dot Foods fails to meet the requirements for collateral estoppel*

The collateral estoppel doctrine "may be applied to preclude only those issues that have actually been litigated and necessarily and finally determined in the earlier proceeding." *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 307, 96 P.3d 957 (2004). To invoke collateral estoppel, Dot Foods must establish that (1) the issue decided in *Dot Foods* I was identical to the issue that is presented to us now, (2) the prior action ended in a final judgment on the merits, (3) the Department was a party or in privity with a party in the prior action, and (4) application of the doctrine would not work an injustice. *Id.* "Failure to establish any one element is fatal" to a collateral estoppel claim. *Lopez-Vasquez v.*

14

*Dep't of Labor & Indus.*, 168 Wn. App. 341, 345, 276 P.3d 354 (2012). Because Dot Foods cannot satisfy the first requirement, collateral estoppel does not apply.

Both the facts and the applicable law in this case are distinguishable from *Dot Foods* I. The dispute in *Dot Foods* I arose out of Dot Foods' refund request for the tax periods from January 2000 through April 2006, and the legal issue was whether Dot Foods qualified for the direct seller's exemption under former RCW 82.04.423. *Dot Foods* I, 166 Wn.2d at 919. Dot Foods neither alleges nor establishes that the subsequent interim tax periods from May 2006 through December 2007 were directly at issue or actually litigated in *Dot Foods* I. In fact, Dot Foods itself acknowledges that "the periods directly at issue in the prior appeal" were January 2000 through April 2006, CP at 359, and that the interim tax periods fall outside the scope of *Dot Foods* I, Dot Foods' Reply Br. at 8.

Dot Foods asserts that under collateral estoppel principles, the decision in *Dot Foods* I should extend to the interim tax periods because the prior tax appeal adjudicated Dot Foods' exempt status under former RCW 82.04.423. Dot Foods' Resp. Br. at 44. Nothing in the statute or our case law supports this assertion. To the contrary, tax appeals are very limited causes of action. Under RCW 82.32.180, tax appeals are confined to the specific taxes and associated time periods identified by the aggrieved taxpayer. Thus, although *Dot Foods* I and the present case concern the same taxable activity, different tax periods are involved.

The United States Supreme Court and federal circuit courts have declined to apply collateral estoppel in federal tax cases involving identical taxable transactions that occur in subsequent taxing periods. *See* Harvie Branscomb, Jr., *Collateral Estoppel in Tax Cases: Static and Separable Facts*, 37 TEX. L. REV. 584, 587 (1959). In *Commissioner v. Sunnen*, 333 U.S. 591, 598, 68 S. Ct. 715, 92 L. Ed. 898 (1948), the Court determined that separate tax periods give rise to separate causes of action for collateral estoppel purposes. The Court held that the United States Tax Court was not bound by a prior decision of the Unites States Board of Tax Appeals, reasoning that where a subsequent proceeding relates to a *different* taxing period, "the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit." *Id.*

Dot Foods contends that *Sunnen* is inapplicable because it deals with the federal income tax, which is assessed annually, as opposed to continuously on a monthly basis like Washington's B&O tax. Dot Foods' Resp. Br. at 42. However, the federal courts have extended *Sunnen* specifically to cases involving excise tax liability. In *Smith v. United States*, 242 F.2d 486, 488 (5th Cir. 1957), the Fifth Circuit Court of Appeals concluded that "[e]ach month, then, is the origin of a new liability and of a separate cause of action." Applying *Sunnen*, the court stated that "it is clear that the doctrine of res judicata does not apply since the instant suit does

not involve the same claim and the same taxable periods as were involved in the prior action." *Id.*

Regardless of the different taxes involved, the broader rationale of *Sunnen* is compelling:

> A taxpayer may secure a judicial determination of a particular tax matter, a matter which may recur without substantial variation for some years thereafter. But a subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or erroneous, at least for future purposes. If such a determination is then perpetuated each succeeding year as to the taxpayer involved in the original litigation, he is accorded a tax treatment different from that given to other taxpayers of the same class. As a result, there are inequalities in the administration of the revenue laws, discriminatory distinctions in tax liability, and a fertile basis for litigious confusion.

*Sunnen*, 333 U.S. at 599. The Court further observed that collateral estoppel is only meant to apply in situations that "have remained substantially static, factually and legally." *Id.* This reflects the well-established principle that an "'intervening change in the applicable legal context'"—such as the retroactive amendment in this case—prohibits the application of collateral estoppel. *Hambleton*, 181 Wn.2d at 835 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 28(2)(b) (AM. LAW INST. 1982)). The facts following *Dot Foods* I were not static, factually or legally. Factually a different tax period was at issue, and legally there was an intervening change in the law that narrowed the scope of the exemption in such a way that excluded Dot Foods. In fact, Dot Foods concedes that if the amendment applies

retroactively, it would not be able to satisfy the requirements for invoking collateral estoppel. Dot Foods' Resp. Br. at 37 ("Had the [l]egislature not changed the law retroactively, Dot Foods would have met the 4-part test for collateral estoppel.").

*Sunnen* and earlier federal cases[5] established that determinations about tax liability for one taxing period under then-applicable statutes do not control decisions regarding subsequent taxing periods under amended statutes. We find the reasoning of these cases persuasive and hold that collateral estoppel does not apply to subsequent taxing periods that were not previously adjudicated.

> ii. *Section 1706 does not extend the judgment in* Dot Foods *I to the subsequent interim tax periods.*

The traditional application of issue preclusion principles adequately addresses the collateral estoppel claim, but Dot Foods also asserts a statutory basis for the preclusive effect of the judgment in *Dot Foods* I. The amending statute explicitly provides that the substantive amendment to RCW 82.04.423 "does not affect any final judgments, not subject to appeal, entered by a court of competent jurisdiction before the effective date of this section." LAWS OF 2010, 1st Spec.

---

[5] *See Monteith Bros. Co. v. United States*, 142 F.2d 139, 140 (7th Cir. 1944) ("[A]lthough the transactions involved in different years were similar, they were not identical, and must therefore be studied in the light of the law and facts of the year involved."); *Henricksen v. Seward*, 135 F.2d 986, 987 (9th Cir. 1943) ("While the mechanical processes and the business practices of the taxpayer were found to be substantially identical in the several periods, nevertheless the transactions held not subject to tax in the earlier suit were not the transactions subjected to tax in this, nor were the periods involved the same.").

Sess., ch. 23, § 1706. This section has the effect of preserving the judgment in *Dot Foods* I only as to the tax periods actually litigated in that case. Perhaps anticipating that it could not satisfy the requirements for collateral estoppel, Dot Foods asserts that collateral estoppel is "built into the 2010 legislative amendment" under section 1706. CP at 469.

The trial court properly rejected this argument, observing that "the 2006 to 2007 refund request was not a 'final judgment' when the amendment went into effect. Indeed, that matter is currently 'subject to appeal' in this very case." *Id.* at 470. As discussed above, Dot Foods cannot show—and in fact admits—that the interim period was not directly at issue or actually litigated in *Dot Foods* I. Because a refund for the interim period was not reduced to a final judgment prior to the date that the 2010 amendment went into effect, section 1706 is not implicated.

C. SEPARATION OF POWERS CLAIM

"The legislature violates separation of powers principles when it infringes on a judicial function." *Hambleton*, 181 Wn.2d at 817-18 (citing *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 143, 744 P.2d 1032, 750 P.2d 254 (1987)). We have recognized "that a retroactive legislative amendment that rejects a judicial interpretation would give rise to separation of powers concerns" but have been willing to uphold such amendments where "the legislature was careful not to

reverse our decision." *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 508, 510, 198 P.3d 1021 (2009).

Dot Foods cannot point to any evidence that the legislature intended to affect or curtail the judgment in *Dot Foods* I. In fact, as discussed above, the legislature explicitly preserved prior judgments in section 1706 and we upheld a retroactive amendment with language identical to section 1706 against a separation of powers challenge in *Hambleton*, 181 Wn.2d at 817. Furthermore, as also discussed above, the judgment in *Dot Foods* I does not encompass the interim period at issue now; therefore, retroactive application of the amendment to this period does not run afoul of the separation of powers doctrine.

CONCLUSION

We have previously observed that "[o]ccasionally, try as the court may, the legislature is disappointed with the court's interpretation." *Hale*, 165 Wn.2d at 509. It is entirely within the proper function of the legislature to amend laws in response to our decisions. This is how the lawmaking process is meant to work.

In amending RCW 82.04.423(2), the legislature was careful to avoid trespassing on the judicial function by explicitly preserving any final judgments prior to the effective date of the amendment. Our jurisprudence requires us to show the legislature equal respect in this case by upholding the retroactive

application of this amendment as to Dot Foods for the tax periods not encompassed by our prior decision in *Dot Foods* I.

We affirm the trial court's decision to grant the Department's motion for summary judgment on the collateral estoppel and separation of powers arguments, but we reverse the trial court's decision to grant Dot Foods' motion for summary judgment on the due process claim. In doing so, we hold that the retroactive application of the amendment to RCW 82.04.423 applies to the May 2006 through December 2007 interim tax periods, and that Dot Foods is liable for the B&O tax for this time period.

_____
Yu, J.

WE CONCUR:

_____
Madsen, C.J.

_____
Johnson, J.

_____
Owens, J.

_____
Fairhurst, J.

_____
Stephens, J.

_____
Wiggins, J.

_____
González, J.

_____
Gordon McCloud, J.