# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SHAWNEE K. LAZZARI, | No. 47924-9-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| FREDIA DELORES SZETO, | |
| Respondent. | |

MAXA, J. – Shawnee Lazzari appeals the trial court's CR 12(b)(6) dismissal of her breach of contract and unjust enrichment claims against Fredia Szeto. We hold that the trial court erred by considering Szeto's motion under CR 12(b)(6) instead of converting it to a summary judgment motion because the motion was based on materials outside the scope of Lazzari's complaint. In addition, to provide guidance to the trial court on remand, we hold that the trial court erred in applying collateral estoppel to dismiss Lazzari's claims. Finally, we decline to award Lazzari her reasonable attorney fees on appeal. We reverse and remand for further proceedings consistent with this opinion.

## FACTS

*First Lazzari Lawsuit and Release*

Lazzari and Szeto own adjoining parcels in Roy. In 2012, Lazzari sued Szeto to quiet title in real estate, alleging trespass and nuisance and requesting injunctive relief. Szeto filed an answer asserting several counterclaims, including abuse of process, trespass, nuisance, tortious

interference with business expectancy, and negligent infliction of emotional distress. Some of the claims were based, in part, on Szeto's allegations that Lazzari harassed Szeto's horse boarding customers and released her dogs to harass Szeto's horses. In addition, Szeto alleged in her answer and counterclaim that in November 2012 Lazzari had yelled racial slurs at her in person and then again over the phone, and that in May 2013 Lazzari yelled profanities, threats, and insults at her.

On June 23, 2014, Szeto signed a Settlement Agreement and Release of All Claims in which she agreed to a broad release of all claims against Lazzari in exchange for payment of $4,500. The settlement agreement generally defined "claims" as claims, causes of action or demands resulting from the incidents alleged in Szeto's counterclaims up until the date of the settlement agreement and all disputes in any way related to the lawsuit allegations. The trial court subsequently entered a stipulated order of dismissal of Szeto's counterclaims.

*Szeto Petition for Anti-Harassment Order*

On December 4, 2014, Szeto filed a petition for an anti-harassment order in district court following a verbal altercation she had with Lazzari on December 3. The petition is not in the record, but Lazzari's complaint in this action contains the following allegations regarding the petition:

> 13. Ms. Szeto's bases for seeking an anti-harassment order referenced an alleged incident on December 3, 2014 during which she claimed that Ms. Lazzari directed offensive language toward her.
> 14. Ms. Szeto references other undated allegations in her petition, including an allegation that Ms. Lazzari had shouted racial slurs at her (and used racial slurs in discussing Ms. Szeto with other people), told her workers not to work for her anymore, that Ms. Szeto is a thief, and that Ms. Lazzari had "reported me repeatedly to land management [sic] animal control [sic] the health department [sic] and others [sic] agencies falsely."

15. Ms. Szeto references at least one alleged incident in her petition for anti-harassment order that predates June 23, 2014.

16. In addition to referencing allegations that were supposed to be resolved by the terms of the Settlement Agreement attached hereto as Exhibit A, Ms. Szeto's supporting documentation for her petition included excerpted deposition testimony of a witness in Pierce County Superior Court Cause Number 12-2-15888-1 for the Court's consideration.

. . . .

20. The information provided to the Court by Ms. Szeto in furtherance of her petition for an anti-harassment order included information that was not otherwise available to the Court, including the excerpted testimony of a witness that was procured while Ms. Szeto's counterclaims were still pending in Cause Number 12-2-15888-1.

Clerk's Papers (CP) at 3-4.

In response to Szeto's petition, Lazzari submitted a declaration arguing that Szeto "should not be trying to revive or improperly refer to her counterclaims that were dismissed in my lawsuit" and that "[t]he allegations in [Szeto's] counterclaims [from the first lawsuit] mirror those alleged by [Szeto] in this action." CP at 25. In a supplement declaration, Lazzari argued that "Szeto has refused to dismiss this action even though she is prohibited from relying upon the counterclaims that have been dismissed in my lawsuit." CP at 47.

Szeto filed a declaration responding to Lazzari's declarations. She stated:

I filed this Petition because of racial slurs and threats Shawnee Lazzari yelled and made against me on December 3, 2014. I offered reference to events occurring in 2012 only by way of history for the Court to further understand the relationship between the parties. *I have no intention of relitigating any of the issues previously litigated between Ms. Lazzari and myself.* To the extent it provides the Court an idea of Ms. Lazzari's longstanding history of attempting to harass me, it is relevant. I am not, however, seeking relief based upon that conduct. I am not asking for the same relief that was sought in the counterclaims. Ms. Lazzari is confusing my desire to have protection from her harassment with monetary relief for the damage she caused to my business. The latter has been previously resolved and *I am seeking protection arising from events which occurred after that lawsuit.* Now, my primary concerns are the events on December 3, 2014 and Ms. Lazzari's threats on that day, and her ongoing harassment in recent months.

3

CP at 54-55 (emphasis added).

In January 2015, the district court granted an order for protection from unlawful civil harassment restraining Lazzari for one year from attempting to contact Szeto or from following or keeping Szeto under surveillance.

In her complaint in this action, Lazzari alleges that she filed a motion to reconsider entry of the anti-harassment order. The complaint alleges that the district court affirmed the order, "specifically noting that the petition had been based on more than the December 3, 2014 allegation." CP at 4.

*Second Lazzari Lawsuit*

In May 2015, Lazzari filed an amended complaint alleging that Szeto had breached the June 2014 settlement agreement by relying on her previously released claims to obtain the anti-harassment order and had been unjustly enriched by accepting the settlement funds and then breaching the settlement agreement. Lazzari alleged that she had incurred damages for loss of reputation/stigma, mental/emotional anguish, and the $4,500 paid to Szeto under the settlement agreement. Lazzari also requested an award of attorney fees under the settlement agreement.

On July 9, Szeto filed a motion to dismiss Lazzari's complaint, arguing that (1) collateral estoppel barred Lazzari's claims because the district court had considered and rejected Lazzari's argument that Szeto had breached the settlement agreement in seeking the anti-harassment order; and (2) Lazzari's lawsuit failed to state a claim upon which relief could be granted because Szeto had not breached the settlement agreement as a matter of law. The motion apparently was noted for consideration on July 17.

At the same time, Szeto filed an answer attaching three declarations: (1) Lazzari's declaration in opposition to the anti-harassment petition, which attached photographs, Szeto's answer and counterclaims to Lazzari's initial complaint, and the stipulation and order of dismissal regarding Szeto's counterclaims; (2) Lazzari's supplemental declaration in the anti-harassment matter, which attached photographs, excerpts from Szeto's February 2014 deposition, and a letter from the Pierce County Health Department; (3) Szeto's declaration submitted in support of the anti-harassment petition, which attached pictures and excerpts from a deposition of neighbor Darlene Wilson taken in February 2014. The answer also attached the district court anti-harassment order.

Lazzari objected to Szeto's motion to dismiss, arguing that Szeto's attachment of additional documents to her answer converted Szeto's motion to dismiss into a CR 56 summary judgment motion requiring 28-day notice. Lazzari requested that the hearing on the motion be postponed for 28 days to give her the opportunity to procure and submit affidavits and other evidence in opposition to the motion. Lazzari also opposed the motion on the merits.

The trial court heard argument on Lazzari's request to postpone the hearing, and without explanation decided to rule on the motion to dismiss. The trial court granted Szeto's motion to dismiss Lazzari's complaint, ruling that collateral estoppel applied to bar Lazzari's claims.

Lazzari appeals.

## ANALYSIS

A.    CONSIDERING MOTION TO DISMISS UNDER CR 12(b)(6)

Lazzari argues that the trial court erred in considering Szeto's motion to dismiss under CR 12(b)(6) and refusing to convert the motion as a summary judgment motion. We agree and

5

hold that because Szeto relied on several declarations from the anti-harassment matter and related documents, the trial court erred in not converting Szeto's motion to a summary judgment motion and not giving Lazzari more time to respond.

### 1. Legal Principles

CR 12(b) states:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion *shall be treated as one for summary judgment* and disposed of as provided in rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by rule 56.

(Emphasis added.)

Under this rule, on a CR 12(b)(6) motion the trial court generally can consider only the allegations in the complaint and cannot consider information beyond the face of the complaint. *See Jackson v. Quality Loan Serv. Corp.*, 186 Wn. App. 838, 844, 347 P.3d 487, *review denied*, 184 Wn.2d 1011 (2015). If the trial court considers information outside the complaint, the CR 12(b)(6) motion must be converted to a summary judgment motion. *McAfee v. Select Portfolio Servicing, Inc.*, 193 Wn. App. 220, 226, 370 P.3d 25, 29 (2016).

Despite the absolute wording of CR 12(b), courts have recognized that the trial court can consider certain types of outside information on a CR 12(b)(6) motion: (1) a written "instrument" such as a contract from which a dispute arises if its authenticity is not questioned, *P.E. Sys., LLC v. CPI Corp.*, 176 Wn.2d 198, 205, 289 P.3d 638 (2012); (2) documents specifically referenced in the complaint but not attached, *Jackson*, 186 Wn. App. at 844; and (3) through judicial notice, public documents if their authenticity cannot reasonably be disputed. *Id.* In addition, the trial court can consider information outside of the complaint without converting a CR 12(b)(6)

motion to a summary judgment motion if "the 'basic operative facts are undisputed and the core issue is one of law.' " *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 827 n.2, 355 P.3d 1100 (2015) (quoting *Ortblad v. State*, 85 Wn.2d 109, 111, 530 P.2d 635 (1975)).

  2. Documents Referenced in Complaint

Lazzari's complaint expressly referenced a deposition excerpt from the first lawsuit and the district court's anti-harassment order, both of which Szeto attached to her answer. The trial court clearly could consider these documents under CR 12(b)(6).[1]

However, Szeto also attached three declarations submitted in the anti-harassment matter, each of which attached other materials as well. Szeto argues that because Lazzari's complaint repeatedly referenced the anti-harassment proceeding, the trial court was allowed to consider any of the pleadings in that proceeding.

Szeto cites to *Jackson*, where Division One of this court held that the trial court could consider an adjustable rate note, prepayment penalty addendum, and an allonge to the note in a CR 12(b)(6) motion because they were repeatedly referenced in the plaintiff's complaint. 186 Wn. App. at 844. But in *Jackson* the complaint referenced the specific documents that the trial court considered. *Id.* Here, the complaint referenced only the case to which the declarations related. Szeto cites no authority for the proposition that a reference to a subject matter allows the trial court to consider all documents relating to that subject matter in a CR 12(b)(6) motion.

We hold that the reference to the anti-harassment proceeding in Lazzari's complaint did not allow the trial court to consider the three declarations attached to Szeto's answer.

---

[1] Lazzari's complaint also expressly referenced and discussed in detail Szeto's petition for an anti-harassment order. Although the trial court could have considered the petition under CR 12(b)(6), Szeto did not attach the petition to her answer.

3.  Authentic Public Documents

The court in *Jackson* held that a trial court can take judicial notice for purposes of a CR 12(b)(6) motion of "public documents if the authenticity of those documents cannot be reasonably disputed." *Id.* The court relied on ER 201(b)(2), which permits the trial court to take judicial notice of a fact that is "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.* The court approved of the trial court's consideration of "readily available public documents" – a corporate assignment of a deed of trust and appointment of successor trustee that had been recorded. *Id.* at 845.

Szeto argues that the district court declarations fall within this category because their authenticity cannot be disputed. However, Szeto sites no authority for her argument that declarations filed in another proceeding are the type of "public documents" that a trial court can take judicial notice of and consider under CR 12(b)(6). In *Spokane Research & Defense Fund v. City of Spokane*, the Supreme Court stated that a court cannot take judicial notice of records of other independent and separate judicial proceedings even though they are between the same parties unless those proceedings are " 'engrafted, ancillary, or supplementary' " to the case before it. 155 Wn.2d 89, 98, 117 P.3d 1117 (2005) (quoting *In re Adoption of B.T.*, 150 Wn.2d 409, 415, 78 P.3d 634 (2003)); *see also DeLong v. Parmelee*, 157 Wn. App. 119, 167, 236 P.3d 936 (2010). The anti-harassment matter was not ancillary to Lazzari's second lawsuit.

Szeto relies on *P.E. Systems,* 176 Wn.2d at 204-05, for the proposition that authentic, objective documents can be considered in a CR 12(b)(6) motion. But in that case the Supreme Court held that a contract that was attached to a pleading became part of the pleadings for

purposes of CR 12(b) and (c) because the contract was a "written instrument" under CR 10(c). *Id.* at 204. In contrast, the court specifically recognized that "exhibits that stretch the definition of a 'written instrument,' such as affidavits, are extrinsic evidence that may not be considered as part of the pleadings." *Id.* at 205. Szeto does not argue that the declarations at issue here are "instruments."[2]

We hold that the three declarations attached to Szeto's answer are not the type of authentic public documents that a trial court can consider under CR 12(b)(6).

### 4. Plaintiff's Own Declarations

Szeto argues that the trial court could consider Lazzari's own declarations because she cannot challenge the authenticity of those declarations without admitting perjury. However, Szeto cites no authority to support the argument that the plaintiff's prior declarations can be considered in a CR 12(b)(6) motion. We reject this argument.

### 5. Conclusion

Szeto provides no authority that would allow the trial court to consider the district court declarations without converting the CR 12(b)(6) motion to a summary judgment motion. CR 12(b) required the trial court to give Lazzari a "reasonable opportunity to present all material made pertinent to such a motion" by CR 56. Under CR 56(c):

> The motion and any supporting affidavits, memoranda of law, or other documentation shall be filed and served not later than 28 calendar days before the hearing. The adverse party may file and serve opposing affidavits, memoranda of law or other documentation not later than 11 calendar days before the hearing.

---

[2] Szeto also emphasizes that she did not attach the district court declarations for any argumentative purpose and the records were not provided for the truth of the matter asserted. While this may be true, Szeto cites no authority holding that this fact allows the trial court to consider these types of declarations.

Lazzari was not provided the opportunity to submit opposing documentation. Nor was she provided with the required amount of time to respond to Szeto's motion.

Accordingly, we hold that the trial court erred by not converting Szeto's motion to dismiss to a summary judgment motion as required in CR 12(b), and we reverse the trial court's dismissal and remand for further proceedings.

B.    APPLICATION OF COLLATERAL ESTOPPEL

Even though we remand for consideration of Szeto's motion to dismiss under CR 56, we address collateral estoppel to provide guidance on remand.

In opposition to Szeto's anti-harassment petition, Lazzari argued that the district court could not consider evidence of her pre-settlement agreement conduct that Szeto had submitted. The district court entered an anti-harassment order despite this argument. Szeto argues, and the trial court ruled, that the district court's order has collateral estoppel effect and bars Lazzari's breach of contract and unjust enrichment claims. We hold that the trial court erred in applying collateral estoppel because the district court did not *necessarily* decide whether Szeto's reliance on Lazzari's pre-settlement agreement conduct constituted a breach of contract or unjust enrichment.

Collateral estoppel, also called issue preclusion, "bars relitigation of an issue in a subsequent proceeding involving the same parties." *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306, 96 P.3d 957 (2004). To prevail on a collateral estoppel argument, the party seeking application of the doctrine must show that (1) the issue decided in the prior action is identical with the one presented in the second action, (2) the prior action ended in a final judgment on the merits, (3) the party against whom the doctrine is asserted must have been

10

a party or in privity with a party in the earlier proceeding, and (4) application of collateral estoppel will not cause an injustice against the estopped party. *Dot Foods, Inc. v. Dep't of Revenue*, 185 Wn.2d 239, 254, ___ P.3d ___, (2016). The failure to establish any one element precludes the application of collateral estoppel. *Id.*

Regarding the first requirement, collateral estoppel " 'may be applied to preclude only those issues that have actually been litigated and necessarily and finally determined in the earlier proceeding.' " *Id.* (quoting *Christensen*, 152 Wn.2d at 307). "The first consideration of collateral estoppel is whether the previous action *necessarily* decided the same issue presented in the current case." *Schibel v. Eymann*, 193 Wn. App. 534, 546, ___ P.3d ___ (2016). The question here is whether the district court in issuing the anti-harassment order necessarily decided the issue of whether Szeto could rely on Lazzari's pre-settlement agreement conduct in obtaining the anti-harassment order without violating the settlement agreement.

To issue a civil anti-harassment order prohibiting the unlawful harassment, RCW 10.14.080(3) requires that the district court find by a preponderance of the evidence that unlawful harassment exists. "Unlawful harassment" is a "knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose." RCW 10.14.020(2). A "course of conduct" is "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." RCW 10.14.020(1). A course of conduct must be "such as would cause a reasonable person to suffer substantial emotional distress, and shall actually cause substantial emotional distress to the petitioner." RCW 10.14.020(2).

Lazzari alleged in her complaint in this action that Szeto's petition relied on one incident that occurred before the settlement agreement and an excerpt from a deposition in the first lawsuit. But for collateral estoppel to apply, consideration of that information must have been *necessary* for the district court to enter an anti-harassment order. Szeto cannot establish this element. By issuing the anti-harassment order, the district court did not necessarily rely on pre-settlement agreement conduct. The district court could have determined that a course of conduct was established by the December 3, 2014 incident and events that occurred after Szeto signed the settlement agreement. The order itself does not state what conduct constituted the required course of conduct.

Further, in her declaration in support of the petition, Szeto expressly stated that she was not seeking relief based on Lazzari's pre-settlement agreement conduct and instead was "seeking protection arising from events which occurred after that lawsuit." CP at 55. The district court could have relied on this statement and limited its consideration of the evidence to events occurring after Szeto signed the settlement agreement.

Finally, even if the district court necessarily considered Lazzari's pre-settlement agreement conduct, the issue decided in the anti-harassment matter was not identical to the issue underlying Lazzari's breach of contract and unjust enrichment claims. The district court's only concern was whether an order was appropriate under the anti-harassment statutes based on the evidence presented. Whether reliance on pre-settlement agreement conduct constituted a breach of the settlement agreement was immaterial to the district court's decision.

12

We hold that Szeto cannot establish the first collateral estoppel requirement.[3]

Accordingly, we hold that the trial court erred in applying collateral estoppel to dismiss Lazzari's

complaint under CR 12(b)(6).

C.      ATTORNEY FEES ON APPEAL

Lazzari requests reasonable attorney fees[4] pursuant to the settlement agreement and RAP

14.[5]

The settlement agreement states:

> In the event that any action, motion and/or other legal action is undertaken by any
> party to enforce the terms of this Settlement Agreement and Mutual Release, the
> prevailing party as determined by the court shall be awarded its attorney's fees
> and reasonable costs incurred in the enforcement or defense of the terms of this
> Confidential Release of All Claims.

CP at 8.

Here, Lazzari has prevailed on appeal. But Lazzari has not yet prevailed "in the

enforcement or defense of the terms" of the settlement agreement. Determination of the

prevailing party will depend on what happens on remand. Therefore, we decline to award

Lazzari attorney fees at this stage in the litigation.

---

[3] Lazzari also argues that Szeto cannot establish the fourth element of collateral estoppel, arguing
that application of the doctrine would be unfair. Because we conclude that Szeto cannot
establish the first element of collateral estoppel, we do not address this argument.

[4] In addition, Lazzari requests an award of costs. Upon filing of a cost bill, costs are awarded to
the prevailing party under RAP 14.2. Therefore, we need not address this issue.

[5] Szeto also requests an award of attorney fees on appeal pursuant to RAP 18.1. We decline to
award Szeto attorney fees because she is not the prevailing party on appeal.

CONCLUSION

We reverse the trial court's dismissal based on CR 12(b)(6) and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

WORSWICK, J.

BJORGEN, C.J.