FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 DEC 31 AM 8: 58



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TERENCE BUTLER,<br><br>Respondent/Cross-Petitioner,<br><br>v.<br><br>RANDALL T. THOMSEN, individually and on behalf of the marital community comprised of RANDALL THOMSEN and JANE DOE THOMSEN, and CALFO HARRIGAN LEYH & EAKES, LLP, a Washington Professional Limited Liability Partnership, f/k/a/ DANIELSON HARRIGAN LEYH & TOLLEFSON, LLP,<br><br>Petitioners/Cross-Respondents. | DIVISION ONE<br><br>No. 76536-1-I<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br><br><br><br><br>FILED: December 31, 2018 |

DWYER, J. — Terence Butler sued his former attorney, Randall Thomsen, and his former attorney's firm, Calfo Harrigan Leyh & Eakes, LLP (collectively Thomsen), for legal malpractice. Following hearings on cross motions for summary judgment, the trial court ruled that Thomsen breached the standard of care as a matter of law, but declined to dismiss Thomsen's affirmative defense of third party fault or to rule that collateral estoppel barred certain of Butler's alleged theories of causation. We granted discretionary review and now reverse the trial court's rulings that Thomsen breached the standard of care and that collateral

estoppel did not bar Butler's alleged theories of causation arising from breach of fiduciary duty and statutory wage claims.

I

In 2010, ImageSource, a document imaging company, had four equal shareholders: Shadrach White, Victor Zvirzdys, Terry Sutherland, and Terence Butler. Butler discovered that his co-owners had received substantially greater personal payments from the company than he had received. In 2011, the co-owners all agreed to "level out" Butler by having ImageSource pay him amounts to match the expenditures the company had made to the other owners. Butler agreed to wait to receive the payments until the company was performing well.

Shortly thereafter, White left the company and filed a lawsuit (White) against ImageSource and his three former co-owners. Butler, Sutherland, and Zvirzdys retained Thomsen to jointly represent them in defense of the White lawsuit. In mediation, the parties successfully reached an agreement to settle the lawsuit. They memorialized their settlement in a written CR 2A agreement. In pertinent part, this agreement stated that "Mr. White agrees to release all defendants from any claims that he may possess against them. Defendants agree to release Mr. White from any claims that they may possess against him."

White's attorney offered to draft a more detailed agreement that would "be consistent with the CR 2A, but include the more detailed language and items we did not include in the summary agreement." The final release and settlement agreement (White Release) stated:

> In consideration of the promises set forth herein, the Parties agree
> to release one another, their spouses, their respective heirs,

agents, attorneys, employees, directors, heirs, assigns and personal representatives from any and all charges, claims and actions, whether known or unknown, arising prior to the date of this Agreement and arising directly or indirectly out of the Lawsuit or their previous dealings.

Butler, Sutherland, White, and Zvirzdys all signed the White Release.

After the settlement of the White lawsuit, Butler believed that ImageSource was performing sufficiently well to commence paying him pursuant to the "level out" agreement he had reached with his co-owners. Sutherland and Zvirzdys objected. Butler hired an attorney, Mario Bianchi, who filed a lawsuit (Butler) against Sutherland, Zvirzdys, and ImageSource. In this suit, Butler demanded payment pursuant to the level out agreement and advanced several other claims, including breach of fiduciary duty and statutory wage claims.

Butler brought a motion seeking summary judgment against his co-owners on his breach of fiduciary duty and his statutory wage claims. In response, Sutherland and Zvirzdys argued that the trial court should grant summary judgment against Butler on his breach of fiduciary duty and statutory wage claims and should also dismiss all of Butler's claims that arose prior to the White lawsuit. According to Sutherland and Zvirzdys, Butler voluntarily released all such claims by signing the White Release.

In reply, Butler argued that Sutherland and Zvirzdys were misinterpreting the release and that the White Release did not release his claims against them. Butler contended that there was no consideration for the release of claims amongst Butler, Sutherland, Zvirzdys, and ImageSource in the White Release. However, Butler did not assert that Washington law, as explained in Berg v.

Hudesman, 115 Wn.2d 657, 801 P.2d 222 (1990), permitted him to introduce extrinsic evidence of the intent of the signatories to the White Release.

The Butler court rejected Butler's arguments and granted partial summary judgment against him. The court granted summary judgment against Butler as to his breach of fiduciary duty and statutory wage claims and also held that Butler released any claims related to the "level out" agreement when he signed the White Release. Butler neither sought discretionary review of the rulings nor chose to litigate the case to final judgment and appeal the adverse rulings. Rather, 11 months later, he settled the case.

Butler then filed suit against Thomsen, claiming that he committed malpractice in reviewing and approving the White Release by failing to notice that its language released Butler's claims against Sutherland, Zvirzdys, and ImageSource.[1] In the trial court, Butler moved for summary judgment dismissal of various affirmative defenses raised by Thomsen, including third party fault,[2] and for summary judgment that Thomsen breached the standard of care as a matter of law when reviewing the White Release. Thomsen filed his own motion for summary judgment on the issue of causation, asserting that Butler should be collaterally estopped from relitigating his breach of fiduciary duty and statutory wage claims. Both parties provided declarations from experts in support of their motions and in opposition to those of their opponents.

---

[1] This is not the first time we have been asked to resolve an issue in this matter. In an unpublished opinion, Butler v. Thomsen, No. 74258-2-I (Wash. Ct. App. Aug. 29, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/742582.pdf, we held that the White Release did not compel Butler to resolve this dispute with Thomsen through arbitration.

[2] Specifically, that Butler's attorney in the Butler litigation, Mario Bianchi, committed malpractice.

The trial court granted partial summary judgment, holding that Thomsen breached the standard of care as a matter of law, but refused to strike Thomsen's affirmative defense of third party fault. The trial court denied Thomsen's motion for summary judgment based on collateral estoppel. We granted discretionary review.

II

Thomsen contends that the trial court erred by denying his motion for summary judgment on certain issues of causation. This is so, Thomsen asserts, because collateral estoppel barred Butler from relitigating his underlying breach of fiduciary duty and statutory wage claims from the Butler litigation. In response, Butler avers that application of the doctrine of collateral estoppel is inappropriate herein because there was no final judgment in the Butler litigation and because the application of the doctrine would work an injustice. We disagree.

We "review a summary judgment ruling de novo and consider the same evidence heard by the trial court, viewing that evidence in a light most favorable to the party responding to the summary judgment [motion]." Slack v. Luke, 192 Wn. App. 909, 915, 370 P.3d 49 (2016) (citing Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000)). "A court may grant summary judgment if the pleadings, affidavits, and depositions establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Lybbert, 141 Wn.2d at 34. "A material fact is one that affects the outcome of the litigation." Owen v. Burlington N. & Santa Fe R.R., 153 Wn.2d 780, 789, 108 P.3d 1220 (2005). "While questions of fact typically are left to the trial

process, they may be treated as a matter of law if 'reasonable minds could reach but one conclusion' from the facts." Slack, 192 Wn. App. at 916 (quoting Hartley v. State, 103 Wn.2d 768, 775, 698 P.2d 77 (1985)).

In a professional negligence action alleging legal malpractice, "the plaintiff must show (1) the existence of an attorney-client relationship that gives rise to a duty of care, (2) an act or omission by the attorney in breach of that duty, (3) damage to the client, and (4) proximate causation between the breach of duty and the damage incurred." Slack, 192 Wn. App. at 916 (citing Hizey v. Carpenter, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992)). "General principles of causation are no different in a legal malpractice action than in an ordinary negligence case." Halvorsen v. Ferguson, 46 Wn. App. 708, 719, 735 P.2d 675 (1986). Proximate cause is shown through proof that, but for the attorney's negligence, the plaintiff would have prevailed or at least achieved a better result. Halvorsen, 46 Wn. App. at 719.

The doctrine of collateral estoppel applies when the following four elements are met: "(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied." Malland v. Dep't of Ret. Sys., 103 Wn.2d 484, 489, 694 P.2d 16 (1985). "Whether collateral estoppel applies to preclude relitigation of an issue is a question of law that we review de novo." LeMond v. Dep't of Licensing, 143 Wn.

App. 797, 803, 180 P.3d 829 (2008) (citing State v. Vasquez, 109 Wn. App. 310, 314, 34 P.3d 1255 (2001)).

The finality required for a judgment to be appealed is not the same as the finality required for purposes of applying collateral estoppel. Cunningham v. State, 61 Wn. App. 562, 566, 811 P.2d 225 (1991). To determine whether a judgment is sufficiently final to invoke collateral estoppel, we consider whether the decision was adequately deliberated, whether it was firm rather than tentative, whether the parties were fully heard, whether the court supported its decision with a reasoned opinion, and whether the decision was subject to appeal or was reviewed on appeal. Cunningham, 61 Wn. App. at 567 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 13, cmt. g (AM. LAW INST. 1982)). Issues that have been decided on summary judgment may, depending on an analysis of the different factors, be considered to have been decided with sufficient finality. Cunningham, 61 Wn. App. at 567-68. That a party settles a case following a judgment does not prevent said judgment from satisfying the final judgment requirement. Nielson v. Spanaway Gen. Med. Clinic, Inc., 135 Wn.2d 255, 263-64, 956 P.2d 312 (1998). See also In re Dependency of H.S., 188 Wn. App. 654, 660-61, 356 P.3d 202 (2015); Bunce Rental, Inc. v. Clark Equip. Co., 42 Wn. App. 644, 648, 713 P.2d 128 (1986).

"Collateral estoppel is, in the end, an equitable doctrine that will not be applied mechanically to work an injustice." Hadley v. Maxwell, 144 Wn.2d 306, 315, 27 P.3d 600 (2001). "[T]he party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the issue in the first forum."

<u>Christensen v. Grant County Hosp. Dist. No. 1</u>, 152 Wn.2d 299, 309, 96 P.3d 957 (2004). Not only must there have been an opportunity to fully litigate, the party against whom the estoppel is asserted must have had "'interests at stake that would call for a full litigational effort.'" <u>Hadley</u>, 144 Wn.2d at 312 (quoting LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: TRIAL PRACTICE, CIVIL § 373, at 763 (5th ed. 1996)). Indeed, as we have recently reiterated, "for collateral estoppel to apply, the party must have had 'sufficient motivation for a full and vigorous litigation of the issue.'" <u>Weaver v. City of Everett</u>, 4 Wn. App. 2d 303, 316, 421 P.3d 1013 (2018) (quoting <u>Hadley</u>, 144 Wn.2d at 315).

However, it would work an injustice to apply collateral estoppel when "'a new determination is warranted in order to take account of an intervening change in the applicable legal context.'" <u>In re Estate of Hambleton</u>, 181 Wn.2d 802, 835, 335 P.3d 398 (2014) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 28(2)(b) (AM. LAW INST. 1982)). "[C]ollateral estoppel is meant to apply only in situations that 'have remained substantially static, factually and legally.'" <u>Dot Foods, Inc. v. Dep't of Revenue</u>, 185 Wn.2d 239, 256, 372 P.3d 747 (2016) (quoting <u>C.I.R. v. Sunnen</u>, 333 U.S. 591, 599, 68 S. Ct. 715, 92 L. Ed. 898 (1948)).

The parties dispute whether collateral estoppel bars Butler from asserting a theory of causation premised upon breach of fiduciary duty and statutory wage claims previously dismissed on summary judgment by the <u>Butler</u> court.[3] The

---

[3] Thomsen seeks the application of collateral estoppel to Butler's breach of fiduciary duty and statutory wage claims because application of the doctrine strips Butler of a significant portion of his claimed damages. If Butler had lost on his breach of fiduciary duty and statutory wage claims because of the <u>White</u> Release, he could bring a claim against Thomsen to recover what he would otherwise have recovered for such claims in the <u>Butler</u> litigation. However, when, as occurred here, Butler's breach of fiduciary duty and statutory wage claims failed for reasons other

parties agree that the first and third elements of collateral estoppel are met, but Butler incorrectly asserts that there was no final judgment and that the application of collateral estoppel would work an injustice.

The partial summary judgment[4] in Butler was not tentative, Butler provided full briefing on the issues to the Butler court, and the judge supported her ruling with a reasoned written decision. Furthermore, Butler had the opportunity to seek discretionary review of the decision or to file an appeal after entry of final judgment on all claims. The Butler court's ruling was therefore sufficiently firm to constitute a final judgment for the purpose of applying collateral estoppel.

Similarly, the application of collateral estoppel to Butler's causation claims would not work an injustice because Butler had a full and fair opportunity to litigate the issues in Butler. Butler brought the motion which resulted in the summary judgment order he now seeks to avoid. There can be no doubt that he was properly motivated to engage in a full litigational effort to prevail on his motion as he was seeking over one million dollars in damages. While before the trial court in this matter, Butler's counsel conceded that Butler had the opportunity to seek discretionary review in the Butler litigation but decided not to do so. Furthermore, Butler could have seen the matter through to final judgment and then appealed the decisions as a matter of right.[5] See RAP 2.2.

---

than the White Release, Butler cannot then seek to recover for those claims on the ground that Thomsen committed malpractice when reviewing the language of the White Release.

[4] Butler, citing to an unpublished case from Division Two, mistakenly addresses most of his argument on this issue toward the notion that settlements cannot constitute final judgments. One reason this argument is inapposite is because the final judgment relied upon by Thomsen to argue for the application of collateral estoppel is the partial summary judgment order, not the subsequent settlement agreement.

[5] Indeed, Butler's decision to settle his claims against his former co-owners and shift his litigation efforts to a lawsuit against his former lawyer, with the hope or expectation that he would

Butler asserts that substantive changes in the law regarding his statutory wage claims would make the application of collateral estoppel to a ruling made prior to the change unjust.[6]  Specifically, Butler avers that our Supreme Court's holding in LaCoursiere v. Camwest Dev., Inc., 181 Wn.2d 734, 339 P.3d 963 (2014), published subsequent to the Butler court's ruling, changed the law upon which the Butler court based its ruling.[7]  Therefore, according to Butler, it would be unjust to hold him to the Butler court's now legally erroneous ruling.

However, the LaCoursiere decision was published only a few months subsequent to the Butler court's ruling and almost a year *before* Butler settled the Butler litigation.[8]  Butler had sufficient opportunity to bring the LaCoursiere decision to the attention of the trial court,[9] to seek discretionary review in light of the LaCoursiere decision, or to proceed with the litigation and file an appeal subsequent to final judgment on all claims.  He chose not to exercise those

---

be able to litigate anew the issues presented, appears to be the result of a tactical decision, rather than one borne of an inability to see the Butler litigation through to fruition.

[6] Butler also contends that the Butler court made a substantive error in its ruling regarding his breach of fiduciary duty claim, specifically by ruling that the cause of action belonged to the business and, thus, he lacked standing to bring such a claim.  He asserts that it would be unjust to hold him to such an erroneous ruling.  However, the inquiry we conduct herein is concerned only with the opportunity and incentive to fully litigate issues, not with the quality of the decision reached.  Butler had the opportunity to seek review of any rulings he believed to be erroneous, and cannot now use his decision not to do so as a shield to block the application of collateral estoppel and obtain a second bite at the litigation apple.

[7] Such an argument mistakes a change in the law with a change in the interpretation of existing law.  No new statute was passed; the only change in the applicable legal context was the interpretation of an existing statute.

[8] The Butler ruling in question was dated August 15, 2014.  The LaCoursiere decision was published on October 23, 2014.  181 Wn.2d 734.  Butler did not settle the Butler case until September of 2015.

[9] Pursuant to CR 54(b), the Butler court retained the power to revise its interlocutory rulings at any time prior to the final adjudication of all claims.

options.[10] The application of collateral estoppel to these claims works no injustice.

### III

Thomsen next contends that the trial court erred by ruling that he breached the applicable standard of care as a matter of law. This is so, Thomsen asserts, because he presented expert testimony that established a genuine dispute of material fact regarding whether Thomsen breached the standard of care under the circumstances. In response, Butler asserts that Thomsen's expert's testimony is inadmissible evidence and that expert testimony was unnecessary to establish a breach of the standard of care under the circumstances. Thomsen has the better argument.

The standard of care applicable to all cases of professional negligence involving the practice of law is "that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in this jurisdiction." Cook, Flanagan & Berst v. Clausing, 73 Wn.2d 393, 395, 438 P.2d 865 (1968). Thus, to breach the duty of care, an attorney "must fail to exercise 'the degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law'" in Washington. Geer v. Tonnon, 137 Wn. App. 838, 850-51, 155 P.3d 163 (2007) (quoting Hizey, 119 Wn.2d at 261). Breach of the standard of care is generally a question of fact, but if reasonable minds could

---

[10] Because Butler had, despite choosing to forgo it, a full and fair opportunity to litigate the issue of LaCoursiere's applicability to his statutory wage claims, we need not reach the parties arguments regarding the applicability of LaCoursiere to the claims raised.

- 11 -

not differ on the question, breach may also be determined as a matter of law. Smith v. Preston Gates Ellis, LLP, 135 Wn. App. 859, 864, 147 P.3d 600 (2006).

Because the law can be a "highly technical field beyond the knowledge of the ordinary person," Walker v. Bangs, 92 Wn.2d 854, 857, 601 P.2d 1279 (1979) (citing Lynch v. Republic Publ'g Co., 40 Wn.2d 379, 389, 243 P.2d 636 (1952)), expert testimony is often required to determine whether an attorney's duty of care was breached in a legal professional negligence action. Geer, 137 Wn. App. at 851. However, such expert testimony is not required where the breach is such that it could fairly be considered within the common knowledge of laypersons. Walker, 92 Wn.2d at 858.

Several other common principles inform our inquiry. "[E]vidence submitted in opposition to summary judgment must be admissible." SentinelC3, Inc. v. Hunt, 181 Wn.2d 127, 141, 331 P.3d 40 (2014). "[T]o preclude summary judgment, an expert's affidavit must include more than mere speculation or conclusory statements." Cho v. City of Seattle, 185 Wn. App. 10, 20, 341 P.3d 309 (2014).

In addition, "[t]he cardinal rule with which all [contract] interpretation begins is that its purpose is to ascertain the intention of the parties." Berg, 115 Wn.2d at 663 (quoting Corbin, The Interpretation of Words and the Parol Evidence Rule, 50 CORNELL L. QUAR. 161, 162 (1965)). In Berg, our Supreme Court held that "extrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent." 115 Wn.2d at 667. The court quoted directly from the Restatement (Second) of

Contracts, stating that the correct interpretation of a contract is determined "'by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence.'" Berg, 115 Wn.2d at 668 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 212(2) (AM. LAW INST. 1981)). Again quoting from the Restatement, the court explained that this rule "is not limited to cases where it is determined that the language used [in the contract] is ambiguous." Berg, 115 Wn.2d at 668 (quoting RESTATEMENT § 212 cmt. b).

Thomsen first asserts that he presented evidence to show that he did not breach the standard of care. This is so, he avers, because his expert witness opined that the White Release did not release claims amongst Butler, Sutherland, and Zvirzdys. To support his opinion, Thomsen's expert relied upon extrinsic evidence, including the prior CR 2A agreement, an e-mail exchange between Thomsen and White's attorney specifying that the White Release be consistent with the CR 2A agreement, and the preamble to the settlement agreement.

In response, Butler contends that such evidence contradicts the writing and is inadmissible here because the language of the White Release is not ambiguous. To Butler, it follows that expert testimony based upon such extrinsic evidence must also be inadmissible.

To the contrary, Berg clearly states that extrinsic evidence may be admissible to interpret unambiguous contract language. 115 Wn.2d at 668. Thus, the extrinsic evidence was properly relied upon by Thomsen's expert,

whose opinion raised questions of fact regarding the appropriate inferences to draw from the language of the CR 2A agreement and the White Release. This evidence was sufficient to establish a disputed genuine issue of material fact regarding the correct interpretation of the White Release.[11]

Thomsen next asserts that he presented expert opinion evidence tending to prove that, under the circumstances, Thomsen did not breach the applicable standard of care even if the White Release did release claims amongst Butler, Sutherland, and Zvirzdys.[12] Thomsen's expert opined that, given the circumstances of joint representation in a complex business litigation matter, if there was a mistake made in drafting or accepting the White Release, such a mistake was reasonable. Thomsen's expert based this opinion primarily on facts alleged in Thomsen's affidavit, specifically that Butler told Thomsen that there

---

[11] Butler appears to also suggest that we should place at least some weight on the Butler court's ruling that the Release did, in fact, release all claims amongst Butler, Sutherland, and Zvirzdys. However, that ruling is not binding on Thomsen as he was not a party to the Butler litigation and did not have an opportunity to litigate the issue in that case.

[12] Thomsen also asserts that he exercised judgment when reviewing and approving the White Release and that such judgment is protected by the attorney judgment rule expressed in Clark County Fire Dist. No. 5 v. Bullivant Houser Bailey PC, 180 Wn. App. 689, 324 P.3d 743 (2014). Thomsen presumably seeks to qualify the alleged mistake as an exercise of judgment because "[i]n general, mere errors in judgment or in trial tactics do not subject an attorney to liability for legal malpractice." Halvorsen, 46 Wn. App. at 717. In response, Butler contends that Thomsen merely failed to notice the difference between the language of the CR 2A agreement and the White Release and to take appropriate measures to address the differences. Butler further reasons that such failure did not involve an exercise of judgment and, thus, the attorney judgment rule is inapplicable. Our review of the record indicates that Butler is correct; Thomsen did not consider that the pertinent section of the White Release may have expressed something different than the intent expressed in the CR 2A agreement before advising his clients to sign.

However, regardless of whether such an alleged mistake required the exercise of judgment, that does not change the standard of care or that which constitutes a breach of the standard of care in a professional negligence action. The question of breach remains the same: Was Thomsen's alleged failure to notice the difference (if any) between the CR 2A agreement and the White Release an unreasonable mistake under the circumstances? In other words, could an attorney exercising "the degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law" in Washington make such a mistake? Hizey, 119 Wn.2d at 261.

were no unresolved disputes between him and Sutherland and Zvirzdys, that Butler told Thomsen that he had independent counsel, and that Thomsen's engagement letter limited the scope of the engagement to the claims asserted in the White litigation.

Although Butler presented his own expert witness testimony countering that of Thomsen's expert, he asserts that such testimony was unnecessary in this case because the breach was of the type within the common knowledge of laypersons. This is so, Butler contends, because Thomsen's failure to notice that the language of the White Release might release Butler's claims against Sutherland and Zvirzdys is something that laypersons could readily understand. However, the question is not merely whether Thomsen made a mistake in reviewing the language of the White Release but, rather, whether such a mistake is one that no reasonable attorney in Washington would make under the same circumstances. See Geer, 137 Wn. App. at 851 (requiring expert witness testimony tending to prove that attorney breached duty in the specific circumstances where the client failed to disclose information to the attorney). The circumstances herein, a joint representation in a complex business litigation matter, can hardly be considered within the common knowledge of laypersons. Expert opinion evidence on these complex legal circumstances is both appropriate and necessary. See Geer, 137 Wn. App. at 851-52.

Thomsen and Butler presented conflicting expert opinion evidence on the issue of Thomsen's breach of the standard of care. Thus, we conclude that the trial court erred when it granted summary judgment to Butler on that issue.

IV

Next, Butler contends that the trial court should have granted summary judgment against Thomsen precluding Thomsen from arguing the affirmative defense of third party fault. In response, Thomsen asserts that he met his burden by offering evidence sufficient to show a genuine question of material fact regarding each element of a legal professional negligence claim against Bianchi, Butler's attorney in the Butler litigation.

The defense of third party fault is an affirmative defense. See Wuth v. Lab. Corp. of Am., 189 Wn. App. 660, 701-02, 359 P.3d 841 (2015). The party asserting an affirmative defense bears the burden of proving the elements of the defense. Fulle v. Boulevard Excavating, Inc., 20 Wn. App. 741, 743, 582 P.2d 566 (1978). For a third party fault defense, the party asserting third party fault must present evidence of the third party's negligence constituting fault. See e.g., Adcox v. Children's Ortho. Hosp & Med. Ctr., 123 Wn.2d 15, 25-26, 864 P.2d 921 (1993). Thus, because Thomsen asserts that Bianchi's malpractice, or professional negligence, was responsible for any harm to Butler in the Butler litigation, to survive summary judgment Thomsen must show that there is a question of material fact regarding each element of a malpractice claim against Bianchi.

Thomsen contends that he met his burden to offer evidence sufficient to create a question of material fact regarding each element of his third party fault defense through Thomsen's declaration, his expert witness's declaration, and the underlying testimony from the Butler proceedings upon which his expert based

his opinions. Butler does not assert that such evidence fails to meet Thomsen's burden but, rather, asserts that some of the evidence from Thomsen's expert witness is inadmissible. Specifically, Butler avers that Thomsen's expert's opinions regarding Bianchi's choice of forum[13] are inadmissible and that, therefore, Thomsen failed to meet his burden of proof on the issue of causation. Thus, Butler asserts that Thomsen failed to meet his burden to show that Bianchi's actions were the proximate cause of the harm to Butler.[14]

Butler first contends that Thomsen's expert witness's opinions regarding Bianchi's choice of forum are inadmissible because such a consideration is impermissibly speculative. Washington courts' standard "trial within a trial" method of determining cause in fact in a legal malpractice action supports Butler's argument because it necessarily presumes that different fact finders would reach the same conclusion when presented with the same evidence and law. See Brust v. Newton, 70 Wn. App. 286, 293, 852 P.2d 1092 (1993) ("[T]he purpose of the 'trial within a trial' that occurs in a legal malpractice action is not to recreate what a particular judge or fact finder would have done. Rather, the jury's task is to determine what a reasonable judge or fact finder would have done."); See also Daugert v. Pappas, 104 Wn.2d 254, 257, 704 P.2d 600 (1985) ("[W]hen an attorney makes an error during a trial, the causation issue in the

---

[13] Thomsen asserts that Bianchi erred by not insisting that the dispute in Butler be submitted to arbitration before the White case mediator, as allowed in the White Release. Thomsen's theory is that such an arbitration would have advantaged Butler because the mediator/arbitrator had personal knowledge of the White settlement and of the parties' intentions in entering into the settlement.

[14] Indeed, Butler does not dispute Thomsen's expert's opinion regarding whether Bianchi breached the standard of care. The only dispute is whether Bianchi's alleged malpractice proximately caused Butler's alleged damages.

subsequent malpractice action is relatively straightforward. The trial court hearing the malpractice claim merely retries, or tries for the first time, the client's cause of action which the client asserts was lost or compromised by the attorney's negligence."). Furthermore, as noted by courts in other jurisdictions, permitting legal malpractice claims to proceed upon the ground that the attorney should have sought a different venue is to allow claims that are entirely speculative. See e.g., Mitchell v. Transamerica Ins. Co., 551 S.W.2d 586, 588 (1977) ("Trying to predict what a jury might do at any given time or place is hazardous and is one of the vagaries of life.").

Thomsen asserts that the aforementioned policy concerns are addressed herein because arbitration has different evidentiary rules than does superior court and because the arbitration agreement specifies that the mediator who helped negotiate the agreement would act as the arbitrator.[15] We disagree with Thomsen that these reasons are sufficient to overcome the policy concern that testimony, even expert testimony, regarding what a decision-maker might or might not have decided, is speculative. It cannot matter that the decision-maker in arbitration may have had greater background knowledge of the White litigation or that the rules of evidence are different in arbitration. Even if true, testimony regarding what could have been the outcome in such a forum remains speculative. The "trial within a trial" mechanism is the proper method by which to determine what may or may not have happened in prior litigation but for the

---

[15] The White Release actually specifies that the mediator "or a single arbitrator as agreed by the Parties" will arbitrate. It does not state that the parties would necessarily use the services of the mediator.

alleged malpractice. <u>Brust</u>, 70 Wn. App. at 293. Thus, we hold that speculative expert testimony regarding what may have or not have happened in a different forum is inadmissible.

We further hold that Thomsen's expert may not present opinion evidence regarding whether the <u>Butler</u> court would have ruled differently but for Bianchi's tactical decisions. The proper method for determining what a trier of fact would have determined absent Bianchi's alleged mistakes is to present the case to the jury free of such mistakes. <u>See</u> <u>Brust</u>, 70 Wn. App. at 293. For example, Thomsen may present evidence to the jury that Bianchi did not present extrinsic evidence of the intent of the <u>White</u> Release's language in <u>Butler</u> and then may present said extrinsic evidence. However, Thomsen is not permitted to present speculative expert testimony that Bianchi's failure to present such extrinsic evidence and argue for its admissibility under <u>Berg</u> caused the <u>Butler</u> court's rulings regarding the correct interpretation of the <u>White</u> Release. That is for the jury to decide.

Although we hold that Thomsen's speculative expert opinion evidence as to hypothetical results is inadmissible, the underlying evidence upon which said expert opinion evidence is based shows that there is a genuine dispute of material fact on the issue of causation. Butler's reply to Sutherland's and Zvirzdys's response to Butler's motion for summary judgment in the <u>Butler</u> litigation did not in any way refer to <u>Berg</u> and the rules it set forth regarding the

admissibility of extrinsic evidence.[16] Whether such failure resulted in the Butler court's ruling—in other words, whether the extrinsic evidence not considered by the Butler court would establish that the White Release did not release claims amongst Butler, Sutherland, and Zvirzdys—is a disputed factual question. See Berg, 115 Wn.2d at 668 ("A question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence." (quoting RESTATEMENT (SECOND) OF CONTRACTS § 212(2))). We conclude that there is a genuine dispute over a question of material fact regarding whether Bianchi's alleged malpractice proximately caused Butler's alleged damages. The trial court properly denied summary judgment on this issue.

Reversed and remanded for proceedings consistent with this opinion.

We concur:

_____

_____

_____

_____

---

[16] Butler asserts that the extrinsic evidence Thomsen contends should have been introduced is inadmissible under Berg and subsequent cases applying the Berg rules. Butler appears to argue that the evidence is inadmissible simply because it contradicts his and the Butler court's interpretations of the White Release. While Butler lists several principles that courts consider when interpreting contract language (that he asserts show extrinsic evidence should not be admissible when contract language is clear), he fails to acknowledge that the Berg court held both that extrinsic evidence is admissible even in situations in which the contract language is not ambiguous and that "the various principles of [contract] interpretation should not be applied as absolutes." 115 Wn.2d at 664, 669.

- 20 -