IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| TAMMY WOLF SLACK, | ) | |
| | ) | No. 32921-6-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LUCINDA LUKE, ATTORNEY AT | ) | PUBLISHED OPINION |
| LAW & COWAN MOORE STAM LUKE | ) | |
| & PETERSON, LAW FIRM, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — The trial court dismissed this legal malpractice action at summary judgment because the plaintiff, Tammy Wolf Slack, did not have an attorney expert to testify that her underlying claim had some merit. Although we disagree with that rationale, we nonetheless conclude that because the underlying legal action would not have survived a motion for summary judgment, Ms. Slack cannot establish her malpractice cause of action. Accordingly, the judgment is affirmed.

FACTS[1]

Ms. Slack began working for the Department of Corrections (DOC) as a community victim liaison in August 2002. There she provided support services to crime victims over a

_____

[1] We state the facts in a light most favorable to Ms. Slack since she was the party responding to the summary judgment motion.

nine county district; her initial office was in Pasco. Five months after starting with DOC, she was assigned to the Kennewick office.

The Kennewick office was built in a depression in the ground; the first level was below the natural grade. As a result, the sewage needed to be pumped from the building rather than rely on a gravity drain system. On several occasions, power outages caused the sewage to overflow the ground floor drains. Ms. Slack contended that DOC did not properly remediate ensuing problems by removing and replacing materials exposed to the contaminated water. She reported that the lower floor had a musty smell to it and that mold appeared to be growing in the walls and ceiling.

In April 2004, after spending more hours at her desk than usual, Ms. Slack began suffering from pain in her wrist and back. Clerk's Papers (CP) at 553-54, 1893. This pain lasted all day and night. *Id.* Ms. Slack was subsequently diagnosed with a right shoulder impingement, sciatica, and carpal tunnel. Ms. Slack promptly informed her DOC supervisor of these conditions. The supervisor then arranged for Ms. Slack to get in touch with the DOC's ergonomics consultant. It appears that the consultant evaluated Ms. Slack's workstation, but failed to complete a report for some time. This caused significant delay; ultimately, it is unclear if a new workstation was ever ordered.

Ms. Slack also began experiencing migraines, nausea, and sinus infections which she blamed on the building. Ms. Slack also reported these problems to her supervisor. Around this time, a letter from Harborview Medical Center indicated Ms. Slack has

nonallergic rhinitis, which is sensitivity to certain airborne irritants without an allergic trigger. The letter suggests that the musty office could be exacerbating that condition and should be remediated. Ms. Slack's physician also believed that Ms. Slack was suffering based on her work. Ms. Slack suffered significant symptoms when she was in the building, but did not when she was away long enough. Ms. Slack was eventually diagnosed with a gene variance that makes her susceptible to moldy and musty environments.[2]

Ms. Slack began working from home, but still needed to visit the office twice a week. She informed her supervisor that the office needed to be cleaned of mold. After a DOC air quality survey determined that the building's indoor mold was comparable to outdoor mold, DOC refused to take additional action since the air quality was typical of any other office.

Ms. Slack asked for a new office and DOC allegedly refused[3] to transfer her to another office. Instead, her supervisor said he would "prefer to schedule me over the nine (9) counties that I covered from Wenatchee to Goldendale to various DOCS' offices." CP at 373. This assignment that would include making more lengthy drives than typical and make her sciatica worse. Instead, Ms. Slack immediately resigned her position effective in August 2006. She filed a tort claim in August 2009, alleging that

---

[2] The diagnosis appears to have occurred after she left DOC.

[3] At the time of resignation, her supervisor was looking into reassigning Ms. Slack to another office location. CP at 1784-85.

3

No. 32921-6-III
*Slack v. Luke, et al.*

DOC failed to accommodate her disabilities. The Office of Financial Management

(OFM) acknowledged the claim and began an investigation.

Ms. Slack met with Gregory Rhodes, a western Washington attorney, concerning

suing DOC under the Washington Law Against Discrimination (WLAD), ch. 49.60

RCW, for failing to accommodate her medical conditions. Mr. Rhodes declined to

represent her due to the distance involved. Ms. Slack then met with Lucinda Luke for the

first time on September 15, 2009. Ms. Slack contends that Ms. Luke agreed at the close

of the meeting to represent her.[4] The two signed a retainer agreement, but Ms. Slack was

not required to deposit any money. Ms. Slack left materials for Ms. Luke to review and

the two agreed to meet again on October 5, 2009. Ms. Luke subsequently canceled that

meeting, but did send a $260 bill for her review of the materials; Ms. Slack paid the bill.

In an e-mail on October 13, Ms. Slack expressed concern to Ms. Luke that her claim was

expiring. Ms. Luke did not respond to the e-mail, but the two met again on October 20.

The statute of limitations on a WLAD claim expired on October 30, 2009. No

WLAD action was ever commenced against DOC.[5] Ms. Luke contacted OFM on

---

[4] Ms. Luke denied that she undertook to represent Ms. Slack and disagrees with many other factual allegations stated here. As noted previously, we view the evidence in a light most favorable to Ms. Slack for purposes of this opinion.

[5] Represented by different counsel, Ms. Slack did pursue claims for carpal tunnel and occupational disease (mold exposure) in proceedings under the Industrial Insurance Act, Title 51 RCW, after leaving employment with DOC.

4

December 21, 2009, and learned that the statute of limitations had run. She conveyed that information to Ms. Slack and also advised that she had never agreed to take the case because it lacked merit. Ms. Slack's money was returned to her.

Ms. Slack then obtained counsel and brought a legal malpractice action against Ms. Luke and her firm. After discovery, both sides filed for summary judgment. Ms. Luke's motion provided a declaration from a long-time Tri-Cities attorney declaring that no local attorney would have filed suit on a WLAD accommodation claim. In turn, Ms. Slack presented declarations from two Washington attorneys stating that Ms. Luke had breached the standard of care for Washington attorneys by allowing the limitations period to expire without filing suit. They did not, however, address the merits of the underlying claim.

Ms. Luke argued, inter alia, that Ms. Slack needed to support her case with expert evidence that her underlying claim had some merit. Although plaintiff's counsel disagreed that there was any need for an expert witness on the topic, the trial court agreed with the defense that Ms. Slack needed expert testimony to suggest her WLAD claim had some merit. The trial court granted summary judgment to Ms. Luke and her firm. The trial court did not discuss the defendants' remaining challenges.

Ms. Slack timely appealed to this court and presented argument to a panel.

ANALYSIS

The sole issue we need to address is whether a malpractice plaintiff, in light of evidence suggesting the underlying claim is without merit, need produce or identify

evidence supporting that claim.[6] We conclude that a plaintiff must establish that the underlying claim itself would have survived a motion for summary judgment. Because Ms. Slack's underlying accommodation claim would have failed, we affirm.

Initially, we note several basic principles governing summary judgment procedures, attorney malpractice actions, and WLAD accommodation claims. As has been stated many times and many ways, an appellate court will review a summary judgment ruling de novo and consider the same evidence heard by the trial court, viewing that evidence in a light most favorable to the party responding to the summary judgment. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). If there is no genuine issue of material fact, summary judgment will be granted if the moving party is entitled to judgment as a matter of law. *Id.* "A defendant in a civil action is entitled to summary judgment if he can show that there is an absence or insufficiency of evidence supporting an element that is essential to the plaintiff's claim." *Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.*, 169 Wn. App. 111, 118, 279 P.3d 487 (2012).

The moving party bears the initial burden of establishing that it is entitled to judgment because there are no disputed issues of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If a defendant makes that initial showing, then the burden shifts to the plaintiff to establish there is a genuine issue for the

---

[6] In light of this disposition, we do not address Ms. Luke's alternative theories or Ms. Slack's response to those arguments.

trier of fact. *Id.* at 225-26. "A material fact is one that affects the outcome of the litigation." *Owen v. Burlington N. & Santa Fe R.R. Co.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005). While questions of fact typically are left to the trial process, they may be treated as a matter of law if "reasonable minds could reach but one conclusion" from the facts. *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985). A party may not rely on speculation or having its own affidavits accepted at face value. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Instead, it must put forth evidence showing the existence of a triable issue. *Id.*

In order to sustain a legal malpractice action, the plaintiff must show (1) the existence of an attorney-client relationship which gives rise to a duty of care, (2) an act or omission by the attorney in breach of that duty, (3) damage to the client, and (4) proximate causation between the breach of duty and the damage incurred. *Hizey v. Carpenter*, 119 Wn.2d 251, 260-261, 830 P.2d 646 (1992). The standard of care is uniform throughout the state of Washington: "that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in this jurisdiction." *Cook, Flanagan & Berst v. Clausing*, 73 Wn.2d 393, 395, 438 P.2d 865 (1968). A legal malpractice trial effectively requires a trial within a trial on the causation element. The trier-of-fact must decide if the underlying cause of action would have resulted in a favorable verdict for the client; only then is the suit against the attorney viable. *Daugert v. Pappas*, 104 Wn.2d 254, 258, 704 P.2d 600 (1985). Where the

underlying cause of action presents a legal question, a judge must decide the case rather than a jury. *Id.* at 258-259

Some states require expert testimony to establish the standard of care in a legal malpractice action. *Walker v. Bangs*, 92 Wn.2d 854, 858, 601 P.2d 1279 (1979). However, the "general rule is to permit but not require expert testimony." *Id.* Washington does not require expert testimony "when the negligence charged is within the common knowledge of lay persons."[7] *Id.*

In order to prove a WLAD reasonable accommodation claim, the plaintiff must establish four factors: (1) the employee suffered from a disability, (2) she was qualified to do the job, (3) she gave notice to her employer of the disability, and (4) the employer failed to adopt reasonable measures to accommodate the disability. *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 145, 94 P.3d 930 (2004). The accommodation must be medically necessary before the employer has a duty to accommodate. *Pulcino v. Fed. Express Corp.*, 141 Wn.2d 629, 643, 9 P.3d 787 (2000). The employer need only reasonably accommodate a disability; it does not necessarily have to grant the employee's preferred accommodation. *Id.*

With these principles in mind, we finally turn to the questions presented by this appeal. Ms. Slack argues that she was under no obligation to present expert testimony

---

[7] However, the *Walker* court ruled that establishing malpractice in the trial of a maritime case did require testimony from an expert. *Id.*

8

supporting the merits of the WLAD case and that she presented a prima facie case. We agree with the first of those two contentions, but disagree with the second.

In support of her case, Ms. Slack presented affidavits from two attorneys who both opined that Ms. Luke represented Ms. Slack and therefore had a duty to file a complaint against DOC before the statute of limitations had run. In turn, Ms. Luke's expert disputed that she ever undertook representation[8] of Ms. Slack and opined that no attorney would have filed the complaint because it lacked merit due to DOC's efforts to accommodate Ms. Slack. It was in this context that the summary judgment point was argued. Ms. Luke contended that the merits of the case presented a legal, rather than factual, question that needed expert analysis. The trial judge agreed with that contention. We conclude that was error.

As noted previously, expert testimony is permitted in Washington, but typically is not required if the attorney's negligence is within the "common knowledge of lay persons." *Walker*, 92 Wn.2d at 858. The judge is trier-of-fact when the underlying case within a case presents a legal issue. *See Daugert*, 104 Wn.2d at 258-59 (it was error for jury to decide legal questions of whether the Washington Supreme Court would have granted a petition for review and reversed Court of Appeals decision). In all cases raising factual questions, a jury must decide the merits of the underlying claim. *See Brust v.*

---

[8] Ms. Luke's theory was that she only agreed to give a second opinion on the case and billed only for the time to review the records and reach her conclusion.

9

*Newton*, 70 Wn. App. 286, 852 P.2d 1092 (1993) (question of how much a judge would have awarded for spousal maintenance was factual issue for jury). Marrying the first two doctrines together, Ms. Luke argued to the trial court that the evidentiary sufficiency of the WLAD claim presented a legal issue for determination by the court and was properly the subject of an expert legal opinion. Ms. Slack contended that the merits of her case were for a jury, not a judge, to decide.

We think both parties are partially correct. We agree with Ms. Slack that she was not required to present expert legal testimony concerning the adequacy of her WLAD claim. Whether her underlying claim had merit ultimately was a determination for a jury to decide. This was not a situation where expert testimony was needed to establish whether an attorney was negligent as in *Walker*. The trial court erred to the extent that it required expert testimony from the plaintiff concerning the merits of her case.

However, the defendant's argument did present a legal question for the judge rather than a factual question for a jury. When a plaintiff presents insufficient evidence to support her claim for relief, the trial court will dismiss the action instead of presenting it to the jury. CR 50(a)(1); *Alejandre v. Bull*, 159 Wn.2d 674, 689-91, 153 P.3d 864 (2007). This is essentially the same function performed at summary judgment. If there is no legal basis for a case to proceed, summary judgment is proper. *Lybbert*, 141 Wn.2d at 34.

Many states apply this summary judgment standard to the causation element of the plaintiff's legal malpractice case, thereby requiring the plaintiff to demonstrate that her

10

underlying claim would itself survive summary judgment. *E.g.*, *Niehoff v. Shankman &*
*Assocs. Legal Ctr.*, 2000 ME 214, 763 A.2d 121; *Rouse v. Dunkley & Bennett, PA*, 520
N.W.2d 406 (Minn. 1994). *See generally* 4 RONALD E. MALLEN, LEGAL MALPRACTICE
§ 37:78, at 1649-50 (2016 ed.). We conclude that this standard is appropriate for use in
Washington. At a trial on the merits of the WLAD claim, the trial court would be
required under CR 50 to dismiss a legally insufficient case at the conclusion of the
plaintiff's case. There is no reason to require a useless trial in a malpractice action
involving a meritless underlying case. Accordingly, we hold that when the legal
malpractice defendant presents evidence that the unfiled underlying action was without
merit, the plaintiff must establish that her underlying case would survive a motion for
summary judgment. Here, Ms. Luke presented evidence and argument that Ms. Slack's
accommodation case was meritless. The ball then was in Ms. Slack's court.

While the question of whether an employer adequately accommodated an
employee normally presents a factual question for a jury to decide, summary judgment is
appropriate on a WLAD accommodation claim when reasonable minds could reach but
one conclusion. *Christiano v. Spokane County Health Dist.*, 93 Wn. App. 90, 94-95, 969
P.2d 1078 (1998). We believe that is the situation here. DOC permitted Ms. Slack to
work from home. On these facts, that was an appropriate accommodation. It was in
response to her request for a new office that her DOC supervisor indicated his preference

for having her ride the circuit and use all of the field offices within her work region.[9]

There is no indication in the record that working from home was no longer available to

Ms. Slack or that it failed to accommodate her conditions. Rather, it appears simply that

she preferred another work option, but DOC would not give it to her. However, she does

not have the right to her preferred accommodation. *Pulcino*, 141 Wn.2d at 643.

On this record, we conclude that DOC accommodated Ms. Slack by allowing her

to work from home. Her WLAD accommodation claim would not have survived a CR 50

motion at trial and did not establish a viable claim in response to the summary judgment

motion. Accordingly, we agree with the trial court that summary judgment was proper in

this case.

Affirmed.

_____
Korsmo, J.

WE CONCUR:

_____       _____
Siddoway, C.J.                Lawrence-Berrey, J.

---

[9] Although this evidence strongly suggests that DOC was still working with Ms. Slack to accommodate her medical problems, Ms. Slack disputes that fact and we do not decide this case on the basis that the accommodation process was still on-going at the time of resignation.