# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Matter of the Trust Estate of:<br><br>AURORA BOLDING,<br><br>                     Deceased. | No. 55907-2-II<br><br><br><br>UNPUBLISHED OPINION |

VELJACIC, J. — Patricia Bolding appeals the superior court's orders denying her motion for summary judgment, denying her motion to reopen the case and confirm the arbitration, and denying her motion to revise the commissioner's ruling under RCW 2.24.050. She argues that the court improperly determined that the Trust and Estate Dispute Resolution Act's (TEDRA's) arbitration provision applies to this case, because the parties instead agreed to resolve disputes through "binding arbitration," which can only refer to the Uniform Arbitration Act (UAA).

Because the terms of the stipulation and settlement agreement (Agreement) govern this dispute, and the Agreement provides that the UAA, not TEDRA, applies to arbitration of disputes, we reverse and instruct the superior court to reopen the superior court case, enter judgment affirming the arbitration award in Patricia's favor, and award her reasonable costs and attorney fees.

FACTS

I.     SETTLEMENT AGREEMENT

Bruce Bolding and Patricia's mother died in 2018 leaving assets in two separate trusts. Bruce and Patricia[1] were named co-trustees to perform the final and complete distribution of all assets in both trusts. They disagreed on how to distribute the assets. Bruce commenced an action under chapter 11.96A RCW (TEDRA) in Thurston County Superior Court. The parties engaged in mediation with Judge Deborah Fleck pursuant to TEDRA, chapter 11.96A RCW. In October 2019, the parties entered into an Agreement that became effective on December 9, 2019. The parties acknowledged that "[t]his Agreement shall constitute a binding agreement entered into pursuant to RCW 11.96A.220, and shall be binding and conclusive on the beneficiaries and Co-Trustees of the Trusts, and all other persons interested in the Trusts or the Trustors' Estates." Clerk's Papers (CP) at 22.

The Agreement also provides, at paragraph G:

Should there be a dispute about the interpretation or implementation of any of the provisions of this Agreement, the Parties agree that the dispute shall be submitted to *binding arbitration* with the Honorable Deborah Fleck, or other available arbitrator at JAMS in Seattle, WA with attorney fees and costs associated therewith to be paid as ordered by the arbitrator.

CP at 16-17 (emphasis added).

Paragraph U states:

If any legal action or other proceeding, including arbitration or an action for declaratory relief, is brought by the Parties for the construction or enforcement of this instrument, then the non-prevailing party shall pay the reasonable costs and attorney's [sic] fees incurred in any such action by the substantially prevailing party.

---

[1] Because the parties have the same last name, they are referred to by their first names throughout this opinion to avoid confusion. No disrespect is intended.

CP at 22.

II.    DISPUTE OVER PERFORMANCE

The Agreement obligated Bruce to present the agreed-upon motion and stipulated order of dismissal to the superior court for entry within 14 days from the date of the Agreement (by December 23, 2019).  *See* CP at 15 ("Counsel for Bruce Bolding, Ms. [Donna] Price, shall present the attached Motion and Stipulated Order for ex-parte entry in the above-captioned Court within fourteen (14) days from the date of this Agreement.").

Patricia's lawyer, James Grifo, e-mailed Bruce's lawyer, Price, on February 7, 2020 inquiring if the stipulation and order had been presented to the court for entry.  Price responded on February 12 that she "will be sending an updated Stipulation and Order Re Binding Settlement Agreement for [his] signature" and that she would then present that paperwork to the commissioner.  CP at 167.  Grifo responded on February 17 that he did not understand the need for an "updated" stipulation and order and asked that the documents that had been "negotiated, signed, and agreed upon" be entered.  CP at 166.

Price responded, "I am neither signing nor entering a pleading that sets out long-past deadlines and terms for performance which are now moot, (and which your client disregarded and failed to meet, anyway)."  CP at 164.  On February 18, Grifo sent an e-mail to Judge Fleck, with "Request for Arbitration" in the subject line, stating that if Price and her client did not honor the agreement and file the settlement documents and order with the court, he would ask that the matter be set for binding arbitration as provided in the Agreement. CP at 164.  Judge Fleck and the parties engaged in informal mediation over e-mail for the next several weeks, to no avail.  Price continued to assert her intent to file her updated stipulation and order with the Agreement.  When asked to confirm she would enter the paperwork as agreed, Price responded only with the reasons she

wished to use her updated stipulation and order, and with no indication that she would enter the original paperwork.

On March 25, Grifo invoked the arbitration provision of the Agreement. Grifo submitted paperwork according to a briefing schedule Judge Fleck established. One day before the replies were due, Price e-mailed that she would file the original stipulation and order. She did so on May 7, 2020. This paperwork closed the TEDRA case. However, the collateral issue regarding fees and costs incurred in enforcing the stipulation and order remained.

Judge Fleck arbitrated this matter based on documentation. Judge Fleck then e-mailed the arbitration award to the parties on July 7. The final award provided that Bruce was to pay Patricia $3,816 in attorney fees and $2,520 in JAMs fees and costs. The award explains:

> Mr. Grifo on behalf of Patricia Bolding sought arbitration on February 18, 2020 and again on March 25, 2020, after Mr. Bolding's attorney, Ms. Price, continued to refuse on his behalf to enter the fully negotiated documents with the court, despite [Judge Fleck's] repeated efforts to resolve the issue without charge to the parties for [her] time and without the cost of arbitration. On March 27th, [Judge Fleck's] case manager set a briefing schedule for the arbitration with April 3 set for initial submissions, April 10th for responses, April 14th for any replies and April 15th for oral argument. She also advised the parties of their respective shares of the JAMS arbitration fees. Mr. Grifo submitted the documents and the JAMS fee. Ms. Price did not do so. Washington law and the JAMS Comprehensive Arbitration Rules apply.

CP at 308.

On July 9, an updated version of the award was sent that removed highlighting from the second page. Otherwise, the contents remained unchanged. When Bruce learned of the award, he refused to pay the fees associated with the arbitration, arguing that because the arbitration never happened, he should not have to pay any fees. Because JAMS would not release the award until its fees were paid, Patricia paid Bruce's half of the mediation fees.

4

III.   PROCEDURAL HISTORY

On August 10, Bruce filed a notice of appeal of the arbitration award in superior court requesting a trial de novo under TEDRA provision RCW 11.96A.310(9).  Four days later, Patricia moved to reopen the TEDRA action for the purpose of affirming the final arbitration award pursuant to RCW 7.04A.220.  She argued RCW 7.04A.220 and RCW 7.04A.250 applied to the case, not TEDRA, and under the UAA, there is no trial de novo available to review an award.  She added that even if TEDRA applied, Bruce's request for a trial de novo under TEDRA was untimely.  On October 9, 2020, a superior court commissioner heard argument on Patricia's motion to reopen.  The motion was denied because the agreement did not expressly cite the UAA, and the arbitration award had been entered under TEDRA, chapter 11.96A RCW.  The commissioner concluded that because TEDRA applied, the arbitration award could, in fact, be appealed through a request for a trial de novo, as Bruce had done.

Patricia moved to revise the commissioner's order.  The court denied Patricia's motion, concluding "that the specific arbitration provisions under the TEDRA statutory scheme do govern in this case, which allows a trial de novo."  Report of Proceedings (RP) (Nov. 20, 2020) at 15.

Patricia moved for summary judgment regarding Bruce's request for trial de novo under TEDRA.  She asserted that Bruce's request for a trial de novo was untimely and that the court should grant the relief requested in her motion to reopen the case, confirm the arbitration award, and award her fees and costs.  Furthermore, she argued that summary judgment was appropriate because the facts were not in dispute: Bruce breached the terms of the Agreement, and this issue could be decided as a matter of law.

The court denied Patricia's motion for summary judgment.  In its order, the court noted that the motion "fails on its merits for the same reasons the prior Motion for Revision failed on its

5

merits. The proper avenue for immediate review of these issues is a request for an interlocutory appeal, not repeated motions raising the same issues before this Court." CP at 352.

Patricia then moved to certify the order for discretionary review under RAP 2.3(b)(4), but the court refused certification. Patricia then moved this court for discretionary review of the order denying summary judgment, which this court granted, noting that she reserved her right to appeal other orders.

Patricia appeals the orders denying her motions to reopen the case and confirm the arbitration award, to revise the superior court commissioner's order, and for summary judgment.

## ANALYSIS

### I. STANDARD OF REVIEW

We "will review a summary judgment ruling de novo and consider the same evidence heard by the trial court, viewing that evidence in a light most favorable to the party responding to the summary judgment [motion]." *Slack v. Luke*, 192 Wn. App. 909, 915, 370 P.3d 49 (2016). Summary judgment is appropriate if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005).

### II. THE UAA CONTROLS

Patricia argues that the court erred by denying summary judgment because it rested on the legal conclusion that TEDRA applied to review of the arbitration award. Specifically, Patricia contends that the UAA controls review of the final arbitration award. We agree that the UAA controls.

A.      Legal Principles

The legislature enacted TEDRA to provide for resolution of probate matters through nonjudicial dispute resolution methods, such as mediation, arbitration, and agreement. RCW 11.96A.010. In its findings, the legislature stated that "it is in the interest of the citizens of the state of Washington to encourage the prompt and early resolution of disputes in trust, estate, and nonprobate matters" and that it "endorses the use of dispute resolution procedures by means other than litigation." RCW 11.96A.260. By affording a means of alternative dispute resolution, the legislature's intent was to maximize efficiency "by providing any party the right to proceed first with mediation and then arbitration before formal judicial procedures may be utilized." RCW 11.96A.270. Parties to a TEDRA proceeding may move for relief on procedural matters or for summary judgment at any time. RCW 11.96A.100(9). TEDRA provisions "shall not supersede, but shall supplement, any otherwise applicable provisions and procedures." RCW 11.96A.080(2); *In re Est. of Harder*, 185 Wn. App. 378, 384, 341 P.3d 342 (2015).

RCW 11.96A.220 allows parties to resolve TEDRA matters by agreement. It provides:

> If all parties agree to a resolution of any such matter, then the agreement shall be evidenced by a written agreement signed by all parties. Subject to the provisions of RCW 11.96A.240, the written agreement shall be binding and conclusive on all persons interested in the estate, trust, [etc.].

RCW 11.96A.220.

The purpose of RCW 11.96A.220 through .250 is described as a means to "provide a binding nonjudicial procedure to resolve matters through written agreements among the parties interested in the estate or trust. The procedure is supplemental to, and may not derogate from, any other proceeding or provision authorized by statute or the common law." RCW 11.96A.210. "On

filing, . . . the agreement will be deemed approved by the court and is equivalent to a final court order binding on all persons interested in the estate, trust [etc.]." RCW 11.96A.230(2).

TEDRA's arbitration provision is found at RCW 11.96A.310. Section .310(9), unlike the UAA, allows a trial de novo, and includes procedural requirements to request a trial de novo. Under RCW 11.96A.310(3), a party may object to arbitration by filing a petition with the court and serving the petition on the parties. A final decision of "the arbitrator may be appealed by filing a notice of appeal with the superior court requesting a trial de novo on all issues of law and fact." RCW 11.96A.310(9)(a). "The notice of appeal must be filed within thirty days after the date on which the decision was served on the party filing the notice of appeal. A trial de novo shall then be held, including a right to jury, if demanded." RCW 11.96A.310(9)(a). However, if a notice of appeal is not filed within thirty days after the date of service, the arbitration decision is "conclusive and binding on all parties." RCW 11.96A.310(9)(b). "If the arbitrator's decision has been filed with the clerk of the superior court[,] . . . [t]he judgment when entered shall have the same force and effect as judgments in civil actions." RCW 11.96A.310(9)(b).

Agreements for "binding arbitration" are governed by chapter 7.04A RCW. *Dahl v. Parquet & Colonial Hardwood Floor Co.*, 108 Wn. App. 403, 404, 30 P.3d 537 (2001). Under chapter 7.04A RCW, otherwise known as the UAA, the decision on arbitrability is left to the arbitrator, who "shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable." RCW 7.04A.060(3). When parties agree to arbitrate their disputes, they "affirmatively invoke the jurisdiction of Washington courts to facilitate and enforce the arbitration." *Godfrey v. Hartford Cas. Ins. Co.*, 142 Wn.2d 885, 896, 16 P.3d 617 (2001). Once parties contractually agree to binding arbitration, they invoke chapter 7.04A RCW in its entirety and not just the parts that are useful to them. *Id*. at

8

897 (holding that arbitration agreements that violate the [UAA] provisions on review and finality are unenforceable to that extent; thus, the parties could not validly agree to both binding arbitration as to some issues and to arbitration followed by a trial de novo as to other issues).

> B.     The Plain Language of the Agreement Subjects the Parties to Binding Arbitration Under the UAA

Patricia argues that under the plain language of the Agreement, the UAA applies to this dispute. This would have required Bruce to file a motion to modify the award under RCW 7.04A.240, not a notice of appeal and request for a trial de novo under RCW 11.96A.310. We agree.

In this case, it is undisputed that a binding Agreement under RCW 11.96A.220 was entered into on December 9, 2019. The Agreement was signed by both parties: Bruce signed the Agreement on December 5, 2019, and Patricia signed the Agreement on December 9, 2019. This Agreement resolved the TEDRA case. Paragraph G of the Agreement states that in the event of a dispute regarding implementation of the agreement, "the Parties agree that the dispute shall be submitted to *binding arbitration* . . . with attorney fees and costs associated therewith to be paid as ordered by the arbitrator." CP at 16-17 (emphasis added). Paragraph U of the Agreement states that if an action is brought for enforcement of the Agreement, "then the non-prevailing party shall pay the reasonable costs and attorney's [sic] fees incurred in any such action by the substantially prevailing party." CP at 22.

Further, Patricia asserts the use of the phrase "binding arbitration" takes the matter out of TEDRA and into the UAA (ch. 7.04A RCW).

In *Dahl*, the contract provision for settling disputes stated: "Any dispute between the parties shall be decided according to the Mandatory Arbitration Rules [MAR] of the County in which the suit is filed, regardless of the amount in dispute. . . . The arbitrator's decision may only

9

be appealed pursuant to [chapter 7.04 RCW]." 108 Wn. App. at 405. The Dahls, unhappy with work performed by Parquet, pursued arbitration and an award was entered in their favor. *Id*. at 406. Parquet filed a request for a trial de novo, and the Dahls moved for confirmation and entry of judgment on the arbitration award. *Id*. Parquet resisted the confirmation motion, contending that the contract clause characterizing the arbitration as one under chapter 7.04 RCW was ineffective and that they were entitled to a trial de novo as a matter of law. *Id*.

On appeal, the court concluded that by choosing to utilize the MAR procedures, parties do not automatically remove themselves from binding arbitration under chapter 7.04 RCW, and that "[o]nce parties contractually agree to binding arbitration, neither of them can say that the arbitration is not binding after all. . . . they invoke chapter 7.04 RCW in its entirety and not just the parts that are useful to them." *Id*. at 411.

In this case, like the parties in *Dahl*, the parties here contractually agreed to binding arbitration. According to the holding in *Dahl*, this Agreement utilizing binding arbitration invoked the entirety of chapter 7.04 RCW, which does not allow for a trial de novo. The UAA therefore governs the dispute arising from implementation of the Agreement and Bruce is not entitled to a trial de novo. The trial court erred in denying summary judgment in Patricia's favor.

C.    Because the UAA Governs this Dispute, the Superior Court Erred for Refusing to Reopen the Case and Affirm the Arbitration Order

Under the UAA, "[a]n agreement to arbitrate providing for arbitration in this state confers exclusive jurisdiction on the court to enter judgment on an award under this chapter." RCW 7.04A.260(2). After a party to the arbitration proceeding receives notice of an award, the party may file a motion with the court for an order confirming the award, and "the court shall issue such an order unless the award is modified or corrected." RCW 7.04A.220. Judicial review of an

10

arbitration award is extremely limited, and a contract that provides for binding arbitration precludes judicial review. *Dahl*, 108 Wn. App. at 407.

The agreement in this case provided for arbitration in Seattle, giving this state exclusive jurisdiction to enter a judgment on an award under chapter 7.04A RCW. *See* RCW 7.04A.260(2); *See* CP at 16-17 ("Should there be a dispute about the interpretation or implementation of any of the provisions of this Agreement, the Parties agree that the dispute shall be submitted to binding arbitration with the Honorable Deborah Fleck, or other available arbitrator at JAMS in Seattle, WA with attorney fees and costs associated therewith to be paid as ordered by the arbitrator."). Bruce never moved to vacate, modify, or correct the final award. This required the court to confirm the award, as indicated by the language "shall issue" in the governing statutory provision. RCW 7.04A.220.

We hold that the trial court erred in denying summary judgment in Patricia's favor and further erred in denying Patricia's motion to reopen the case and affirm the arbitration award.

D. Bruce's Arguments do Not Support the Conclusion that TEDRA Should Apply to this Dispute

In his brief, Bruce makes a number of arguments to support his position that TEDRA's arbitration provision should apply to this dispute, but these arguments do not compel a different conclusion. First, Bruce, under a heading entitled "No Arbitration Took Place in This Matter," argues that no actual arbitration occurred here, because performance by the parties was complete and all assets had been distributed to the parties. But the record belies Bruce's claim. Judge Fleck arbitrated the issue of attorney fees and issued an award.

Moreover, Bruce does not explain why his assertion is relevant to whether TEDRA or the UAA governs this dispute. Bruce does not dispute the validity of the Agreement, but fails to explain the significance of his allegation that arbitration did not occur. He also fails to cite to any

11

authority supporting this position.[2]  None of Bruce's arguments undermine the remedy provided in the Agreement and properly utilized by Patricia in the face of Bruce's recalcitrance.

## ATTORNEY FEES AND COSTS

Patricia requests attorney fees and costs for litigation before the trial court and for litigation before us.  She makes her request on two separate grounds; under the UAA because she is the prevailing party under the arbitration award, and under the terms of the Agreement for the cost of subsequent litigation which include proceedings before this court and the superior court.  We agree.

First, under the UAA, Patricia contends she is entitled to have the arbitration award affirmed which granted reasonable attorney fees and costs in the amount of $6,336.  As discussed above, the terms of the Agreement govern this dispute.  Paragraph U of the Agreement states that if an action is brought for enforcement of the agreement, "then the non-prevailing party shall pay the reasonable costs and attorney's [sic] fees incurred in any such action by the substantially prevailing party."  CP at 22.  Patricia is the prevailing party in this case under the final arbitration award.  That award granted her attorney fees incurred for Grifo's representation and JAMS fees and costs against Bruce.  According to the terms of the Agreement in paragraph U and the final arbitration award, Patricia is entitled to this award as the prevailing party.  In reversing summary judgment and remanding the case to enter summary judgment in Patricia's favor, we conclude that Patricia is also entitled to attorney fees and costs, in an amount to be determined by the trial court.

---

[2] If Bruce raised this argument as a way of avoiding the consequences of the arbitration order, he certainly did not say so; he nevertheless fails to cite to authority supporting his position. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Second, Patricia requests attorney fees incurred on appeal. Patricia contends that according to the terms of the Agreement, she is entitled to reasonable attorney fees and costs incurred in subsequent litigation, including proceedings before the superior court and this court. RAP 18.1(a) allows this court to award attorney fees to a prevailing party on appeal, if applicable. As the prevailing party, Patricia should be awarded attorney fees and costs on appeal in amount to be determined by our commissioner.

## CONCLUSION

We reverse the superior court's order denying Patricia's motion for summary judgment, instruct the superior court to enter judgment granting Patricia's motion for summary judgment, reopen the case to affirm the arbitration award, and grant Patricia her reasonable costs and attorney fees. We also grant Patricia attorney fees on appeal in an amount to be determined by this court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Worswick, P.J.

Maxa, J.

13